# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

KIMBERLY WHEELER,   )
           )
           )
     **Plaintiff,**  )
v.          )  **Case No. CIV-22-115-RAW-GLJ**
           )
THE BOARD OF COUNTY  )
COMMISSIONERS OF THE  )
COUNTY OF LE FLORE   )
COUNTY, LANCE SMITH,  )
DERWIN GIST, and CRAIG  )
OLIVE,        )
           )
     **Defendants.** )

## REPORT AND RECOMMENDATION

Now before the Court is the Defendant Board of County Commissioners of the County of LeFlore County's ("Board") Motion to Dismiss Plaintiff's Amended Complaint and Brief in Support ("Motion") [Dkt. 24]. The Board seeks the dismissal of Plaintiff's Amended Complaint for failure to state a claim, asserting that Plaintiff fails to allege any facts related to her termination to support any of her many alleged claims. Plaintiff responds that she alleges sufficient facts to meet the requisite pleading standard [Dkt. #26]. On October 14, 2022, the Court referred this case to the undersigned Magistrate Judge for all further proceedings in accordance with jurisdiction pursuant to 28 U.S.C. § 636 [Dkt. 34]. For the reasons set forth below, the undersigned Magistrate Judge finds that the Defendant Board's Motion to Dismiss [Dkt. 24] should be GRANTED in part and DENIED in part.

1

## I.    BACKGROUND

Plaintiff is a female who was over the age of 40 at all times relevant to her claims. She originally filed this action against her former employer and three individual LeFlore County Commissioners in their individual capacities related to her employment with LeFlore County ("County") [Dkt. 2].  Plaintiff's allegations focus on discriminatory treatment she experienced from the Commissioners and other County employees, the Board's failure to adequately address her complaints about such treatment, the failure to pay her certain wages or benefits she was due upon her termination, violation of the Open Meetings Act, and retaliation and termination for the exercise of her First Amendment and whistle-blower rights.  *Id.*  After the Board moved to dismiss the Complaint [Dkt. 17], Plaintiff filed her Amended Complaint, in which she removed a claim for a violation of the Open Meetings Act and added additional facts supporting her remaining claims.  [Dkt. 22]. Specifically, Plaintiff's Amended Complaint asserts the following claims against the Board: violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 20003, *et seq*., for gender/sex discrimination, wage discrimination, hostile work environment, and retaliation; violation of the Equal Pay Act, 29 U.S.C. § 206; violation of the First Amendment of the U.S. Constitution; violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq*.; violation of the American with Disabilities Act and the American With Disabilities Act Amendments Act, 42 U.S.C. §§ 12101, *et seq*., for association discrimination related to her disabled daughter; violation of the Family and Medical Leave Act, 29 U.S.C. §§ 2601, *et seq*., for interfering with Plaintiff's rights to take qualified leave and retaliation; violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201,

*et seq.*, for failure to pay Plaintiff all accrued unused compensatory time upon her termination; failure to pay earned and accumulated vacation leave in violation of 40 O.S. § 165.3; breach of implied contract for failure to pay all earned and accumulated vacation leave and comp time; and a *Burk* tort[1] for wrongful termination and retaliation against Plaintiff as a whistle-blower. [Dkt. # 22].

Plaintiff was originally hired by the County in September 2012 as the Administrative Assistant in Emergency Management, where she reported to Michael Davidson, then the Director of Emergency Management for the County. *Id*. at ¶¶ 9-10 and 18. Plaintiff later became the County's Deputy Director of Emergency Management, which was a part-time position. *Id*. at ¶ 22. In January 2018, Plaintiff succeeded Mr. Davidson as Director of Emergency Management. *Id*. at ¶¶ 25 and 30. At the time of her November 30, 2020 termination, Plaintiff also held the titles of Safety Director, County Flood Plain Administrator and County Grant Writer, as well as being responsible for the County's 911 Addressing and Mapping and being over the Sign Shop. *Id*. at ¶ 12. Plaintiff was an at-will employee during her entire tenure with the County. *Id*. at ¶ 9. On November 30, 2020, Plaintiff was informed by County Commissioner Lance Smith that she was being terminated, but was not given a reason for her termination. *Id*. at ¶¶ 64 and 66.

## II.    MOTION TO DISMISS STANDARD

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be

---

[1] *Burk v. K-Mart Corp.*, 770 P.2d 24 (Okla. 1989).

granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 562. "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Thus, the appropriate inquiry is "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (*quoting Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007)). For the purpose of making the dismissal determination, a court must accept all the well-pled allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the claimant. *Twombly*, 550 U.S. at 555; *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007); *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1231 (10th Cir. 2002). However, the court need not accept as true those allegations that are conclusory in nature. *Erikson v. Pawnee County Bd. of County Comm'rs*, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual

averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1006, 1109-10 (10th Cir. 1991).

### III.    ANALYSIS

#### A.  Title VII Claims

Plaintiff asserts Title VII claims of sex discrimination, wage discrimination, hostile work environment, and retaliation.  [Dkt. # 22].  Under Title VII, it is unlawful "to discharge an individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  A plaintiff may prove a Title VII violation through either direct or circumstantial evidence. *See Furr v. AT & T Techs., Inc.*, 824 F.2d 1537, 1548-49 (10th Cir. 1987).

#### 1.  Gender/Sex Discrimination.

To state a prima facie case of discrimination under Title VII, a plaintiff must allege: (1)  that the victim belongs to a protected class; (2) that the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination.  *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 627 (10th Cir. 2012); *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007).  Plaintiff sufficiently alleges and the Board does not dispute that she belongs to a protected class and she suffered an adverse employment action when she was terminated.

The Board asserts that Plaintiff does not allege that the challenged action took place under circumstances giving rise to an inference of discrimination.  Plaintiff alleges she was discriminated against based on her sex because she was given less favorable working

conditions than her male predecessor and her male successor, she was paid less than her male successor and she was subjected to gender-based remarks by several male co-workers. In particular, Plaintiff alleges that: when she applied for the Director of Emergency Management position ("Director"), Board Commissioner Ceb Scott asked Commissioner Derwin Gist if "his guy" had put in an application; after being hired as Director, Plaintiff had to fill out time sheets showing a 40-hour work week even though her predecessor did not have to submit time sheets; she had to be in the office from 8:00 a.m. until 4:30 p.m. Monday through Friday and on call 24 hours a day; she could not leave the office for lunch unless there was someone who could fill in for her; she was provided a county owned truck as her work vehicle, but it was in poor condition and frequently broke down; in the spring of 2019, then Sheriff Rob Seale told Plaintiff she needed to get rid of her boyfriend and later in 2019 that if she and another female employee got rid of their boyfriends he would take them out for a steak dinner; after rebuffing Sheriff Seale's "advances" he interfered with Plaintiff's performance of her job by instructing dispatchers not to tell Plaintiff of emergency events; in or around January 2020, acting Sheriff Donnie Edwards made several comments in Plaintiff's presence regarding the County "letting women run things"; and acting Sheriff Edwards attempted to impede Plaintiff's ability to perform her job by telling dispatchers they had to have his permission before calling Plaintiff and telling the Commissioners that Plaintiff was not doing her job. *See* Docket No. 22 at ¶¶ 28, 30-36, 41-45, 47-51, and 53-54. Additionally, Plaintiff alleges that after her termination, her male replacement who was believed to be younger had fewer job duties and less qualifications than her but was paid a higher salary, was assisted in performing his duties by others and

was only required to work 8:00 a.m. through 3:30 p.m. Monday through Friday. *Id*. at ¶¶ 70-74.

The thrust of the Board's challenge to Plaintiff's sex discrimination claim is that that the Amended Complaint lacks factual allegations supporting the inference of discrimination. The undersigned Magistrate Judge disagrees.  "Common circumstances giving rise to an inference of unlawful discrimination, as required to support a Title VII discrimination claim, include the hiring of someone not in the protected class as a replacement, or the more favorable treatment of similarly situated colleagues outside the relevant class." *May v. PNC Bank*, 434 F. Supp. 3d 284, 296 (E.D. Penn. 2020).  The Tenth Circuit permits a plaintiff to establish an inference of discrimination by demonstrating that she was treated differently than similarly situated coworkers not within the plaintiff's protected class.  *Clincy v. Transunion* LLC, 684 F. App'x 680, 684 (10th Cir. 2017). Plaintiff alleges that after her termination she was replaced by a male believed to be younger who was less qualified and was paid more than her.  Plaintiff also alleges that her working conditions were less favorable that both her male predecessor and male successor. Although some of the facts alleged are more supportive of an inference of discrimination than others, taken together at this stage of the litigation, the undersigned Magistrate Judge finds that Plaintiff alleges facts sufficient to state a plausible sex discrimination claim.

## 2. **Wage Discrimination.**

To state a prima facie case of pay discrimination under Title VII, a plaintiff must show that she "occupies a job similar to that of higher paid males." *Riser v. QEP Energy*,

776 F.3d 1191, 1200 (10th Cir. 2015) (quoting *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1363)).

As Plaintiff notes, the Board did not address or provide any argument regarding her wage discrimination claim in its Motion. Generally, a party "waive[s] [an] issue by failing to make any argument or cite any authority to support his assertion." *Cowden v. Board of Governors of Colorado State University System by and through Colorado State University-Pueblo*, __ F.Supp.3d __, 2022 WL 4349620, *7 (D. Colo., August 23, 2022) (quoting *United States v. Hardwell*, 80 F.3d 1471, 1492 (10th Cir. 1996)); *see also Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192, 1207 (10th Cir. 2007) (quoting *Tran v. Trustees of State Colleges in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004)) ("[i]ssues not raised in the opening brief are deemed abandoned or waived."). Therefore, here, the Board waived any argument that Plaintiff was subject to Title VII wage discrimination.

Even had the Board addressed this claim, however, the undersigned Magistrate Judge finds that Plaintiff alleges sufficient facts to state a plausible claim for Title VII wage discrimination. Plaintiff alleges that her male replacement in the Director position is paid more than she was when she served in that same position. *See* Docket No. 22 at ¶¶ 11 and 70-71. Therefore, the undersigned Magistrate Judge finds that Plaintiff alleges sufficient facts at this stage of the litigation to state a Title VII wage discrimination claim.

### 3. Hostile Work Environment.

To state a prima facie case of a hostile work environment, a plaintiff must allege: (1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on her membership in a protected group; and (4) due to the

harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of plaintiff's employment and created an abusive working environment. *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007). The Tenth Circuit established that the severe and pervasive nature of the alleged harassment must be established under both objective and subjective standards. *Harrison v. Eddy Potash, Inc.*, 248 F.3d 1014, 1023 (10th Cir. 2001). To satisfy the subjective aspect of a hostile work environment, a plaintiff must show that she "subjectively perceive[d] th[at] environment to be abusive." *Id.* (second alteration in original). The objective component of a hostile work environment claim requires a plaintiff to present evidence that a "reasonable person" would find the same harassment so severe and pervasive that the workplace is objectively hostile or abusive. *Morris v. City of Colo. Springs*, 666 F.3d 654, 664 (10th Cir. 2012). The Court must consider the totality of the circumstances and consider factors such as the frequency of the discriminatory conduct, the severity, whether the conduct is physically threatening or merely an offensive utterance, and whether the conduct unreasonably interferes with the employee's work performance. *Id.* The Tenth Circuit describes pervasiveness and severity as "independent and equal grounds" by which a plaintiff may meet this element of a hostile work environment claim, but the grounds "'are, to a certain degree inversely related: a sufficiently severe episode may occur as rarely as once . . . , while a relentless pattern of less harassment that extends over a long period of time also violates the statute.'" *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1144 (10th Cir. 2008) (alternation in original) (quoting *Cerros v. Steel Techs, Inc.*, 288 F.3d 1040, 1047 (7th Cir. 2002)).

As a female, Plaintiff is a member of a protected group.  Plaintiff also alleges she was subjected to unwelcome harassment because of her gender.  The Board, however, asserts that Plaintiff does not allege facts that any harassment she was subjected to was either severe or pervasive.  In support of her hostile work environment claim, Plaintiff's Amended Complaint alleges that: in the spring 2019, then Sheriff Rob Seale told Plaintiff she needed to get rid of her boyfriend and later in 2019 that if she and another female employee got rid of their boyfriends he would take them out for a steak dinner; after rebuffing Sheriff Seale's "advances" he interfered with Plaintiff's performance of her job by instructing dispatchers not to tell Plaintiff of emergency events; in or around January 2020, acting Sheriff Donnie Edwards made several comments in Plaintiff's presence regarding the County "letting women run things"; and acting Sheriff Edwards attempted to impede Plaintiff's ability to perform her job by telling dispatchers they had to have his permission before calling Plaintiff and telling the Commissioners that Plaintiff was not doing her job.  *See* Docket No. 22 at ¶¶ 41-44, 47-51, and 53-54.  Plaintiff also alleges she complained about this gender-based harassment to the Commissioners, but no action was taken.  *Id*. at ¶¶ 45-46 and 54- 55.

The undersigned Magistrate Judge does not find that Plaintiff plausibly alleges sufficient facts alleging the harassment was sufficiently severe or pervasive as to create a hostile work environment or to interfere with her work performance.  Plaintiff does not allege either pervasive or severe harassment under the subjective or objective standard.  First, Plaintiff merely alleges that after one incident in which Sheriff Edwards made a disparaging remark about women running things she was offended and told him "[y]ou are

starting to step on my toes." *Id*. at ¶ 52.  Although Plaintiff alleges she complained about Sheriff Seale's and Sheriff Edwards' comments to the Commissioners, she offers no allegations of what she actually told the Commissioners.  Such an allegation does not plausibly support Plaintiff's perception that her work environment was abusive.  *See Harrison*, 248 F.3ed at 1023.

Second, Plaintiff does not allege facts supporting the objective component of a hostile work environment.  Instead, the incidents alleged were not relentless, comprising at most four incidents over two years.  While there is no "mathematically precise test" for a hostile work environment, courts look to "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 958 (10th Cir. 2012). "Title VII does not establish a 'general civility code' for the workplace." *Morris*, 666 F.3d at 663-64 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). Thus, "run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in the American Workplace is not the stuff of a Title VII hostile work environment claim." *Id*. at 664.   At most, Plaintiff alleges a few isolated incidents of annoying behavior. Additionally, none of the four incidents include any allegation that they were physically threatening or sufficiently severe to be abusive.  Isolated incidents of offensive comments will not support a finding of a pervasively hostile work environment.  *Id*. at 666 ("A plaintiff does not make a sufficient showing of a pervasively hostile work environment 'by demonstrating a few isolated incidents of . . . sporadic . . . slurs. . . .  Instead, there must be

a steady barrage of opprobrious . . . comments.'" (internal quotes omitted)).  "The mere utterance of a statement which 'engenders offensive feelings in an employee' would not affect the conditions of employment to a sufficient significant degree to violate Title VII." *Gross v. Burggraf Construction Co.*, 53 F.3d 1531, 1537 (10th Cir. 1995) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).   Instead, Plaintiff must allege that "the workplace is permeated with discriminatory intimidation, ridicule, and insult."  *Bird v. West Valley City*, 832 F.3d 1188, 1205 (10th Cir. 2016 (internal quote omitted). Plaintiff has not done so.

Lastly, although Plaintiff alleges that various male employees interfered with her job performance, her allegations are formulaic and conclusory recitations that do not allege any actual interference with her ability to perform her job or that she could not perform her job because of such interference.  For example, Plaintiff alleges vaguely that both Sheriff Seale and later Sheriff Edwards instructed dispatchers not to notify Plaintiff of emergencies.  Plaintiff does not allege, however, that she was not notified of emergencies or that Seale or Edwards' actions actually prevented from her from performing her duties. Instead, Plaintiff alleges that in February 2020 she was called to the scene of an emergency and was there for ten hours despite suffering from kidney stones.  *See* Dkt. 22 at ¶ 56. Thus, Plaintiff alleges she was being notified of emergencies even after the alleged interference by Sheriff Seale and Sheriff Edwards.  Plaintiff offers only the threadbare recital that the sheriffs' actions interfered with her ability to do her job.  Such a conclusory allegation does not suffice. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Therefore,

the undersigned Magistrate Judge finds that Plaintiff does not sufficiently allege facts to support her hostile work environment claim.

### 4. Retaliation.

Under Title VII, it is unlawful to retaliate against an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). To state a prima facie case of retaliation a plaintiff must allege: "'(1) that [s]he engaged in protected opposition to discrimination, (3) that a reasonable employee would have found the challenged action materially adverse, and (3) that a casual connection existed between the protected activity and the materially adverse action.'" *Khalik*, 671 F.3d at 1193) (quoting *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011)).

The Board asserts that Plaintiff fails to allege a retaliation claim because she could not have had a good faith belief that the underlying conduct violated Title VII and she did not allege a causal connection between her complaints and her termination. In support of her retaliation claim, Plaintiff alleges that: in spring 2019, Sheriff Seale told her to get rid of her boyfriend; later in 2019, Sheriff Seale told Plaintiff and another female employee that if they both got rid of their boyfriends he would take them for a steak dinner; Plaintiff complained to the Commissioners about Sheriff Seale's conduct at some unspecified date, although Seale retired in late 2019; in or around early to mid-2020 she complained about Sheriff Edwards' gender-based remarks and treatment multiple times to Commissioners Smith, Gist and Olive, but no action was taken; after a Board meeting on November 30, 2020, the Commissioners continued an informal discussion among themselves; and later

13

on the morning of November 30, 2020 she was terminated without being given a reason. *See* Dkt. 22 at ¶¶ 41-42, 45, 55 and 64-67.

For purposes of her retaliation claim, the inquiry is not whether Plaintiff was actually subjected to discrimination, but whether she had a reasonable, good-faith belief that she was subjected to discrimination. *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015-16 (10th Cir. 2004). An informal complaint to a superior about potential discrimination constitutes protected activity or opposition. *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1205 (10th Cir. 2000). It is generally held that a reasonable, good-faith belief that a complaint involving gender discrimination is not onerous, *see Mattson v. Caterpillar, Inc.*, 359 F.3d 885, 892 (7th Cir.2004), and a plaintiff need only show that her belief that she was complaining about unlawful discrimination was not "completely groundless." *Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 674 (7th Cir. 2011). As it relates to her retaliation claim, it appears the only discriminatory conduct upon which Plaintiff relies were the comments made to her by Sheriff Seale and Sheriff Edwards. While the undersigned Magistrate Judge finds those comments do not rise to the necessary level of severity and pervasiveness to justify a hostile work environment, at this stage it cannot be said that Plaintiff's belief that they were discriminatory were "completely groundless." This finding is supported by the allegation that Plaintiff complained to the Commissioners about the comments. Thus, the undersigned Magistrate Judge finds that Plaintiff sets forth facts supporting a plausible claim that she had a reasonable, good faith-belief that Sheriff Seale and Sheriff Edwards' conduct about which she complained was discriminatory.

14

To establish the causal connection element, Plaintiff must allege "circumstances that justify an inference of retaliatory motive." *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014). "If the protected conduct is **closely followed** by the adverse action, courts have often inferred a causal connection." *Id.* (emphasis added); *see also*, *Marx v. Schnuck Mkts., Inc.*, 76 F.3d 324, 329 (10th Cir.1996) ("protected conduct followed closely by adverse action may justify an inference of retaliatory motive."). However, a three-month gap between protected activity and an adverse action has been held to be too long to support an inference of causation on its own. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999). Where a gap of three months or longer has occurred, a plaintiff must allege other facts, "'more than mere speculation, conjecture, or surmise'" to establish that her protected activity was a but-for cause of the adverse employment action. *Ward*, 772 F.3d at 1203 (quoting *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir.2004)); *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). Plaintiff does not allege that any of her complaints to the Commissioners occurred within three-months of her termination. While somewhat vague, Plaintiff alleges that she complained to the Commissioners about Sheriff Seale's comments sometime in 2019 and Sheriff Edwards' comments in "early- to mid-2020." *See* Dkt. 22 at ¶¶ 45 and 55. Plaintiff was not terminated until November 30, 2020, more than three months after "mid-2020." Moreover, Plaintiff does not allege any other facts supporting a causal connection between her complaints about a hostile work environment and her termination. Based on the above, the undersigned Magistrate Judges finds that Plaintiff does not sufficiently allege facts of a causal connection and, therefore, she does not set forth a plausible retaliation claim.

### B. Equal Pay Act Claim

Plaintiff asserts an Equal Pay Act claim because she was paid less than her male successor. To state a prima facie case of pay discrimination under the Equal Pay Act, a plaintiff must demonstrate that: "(1) she was performing work which was substantially equal to that of the male employees considering the skills, duties, supervision, effort and responsibilities of the job; (2) the conditions where the work was performed were basically the same; [and] (3) the male employees were paid more under such circumstances." *Riser*, 776 F.3d at 1196 (citation and internal quotation marks omitted); *see also Corning Glass Works v. Brennan, Secretary of Labor*, 417 U.S. 188, 195 (1974) (plaintiffs have the burden of showing that "an employer pays different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."). Work is "substantially equal" under the Equal Pay Act if it requires "equal skill, effort, and responsibility." 29 U.S.C. § 206(d)(1).

The Board asserts that the Amended Complaint fails to identify male coworkers whose positions were substantially equal in terms of effort and responsibility who earned more than Plaintiff while she worked for the County. In support of her Equal Pay Act claim, Plaintiff alleges that: after her termination, Dennis Yeachum, who is male, was hired to replace her; and despite being less qualified than Plaintiff and being tasked with less responsibilities than Plaintiff, Yeachum is paid more than Plaintiff was paid before her termination. *See* Dkt. 22 at ¶¶ 70-72.

16

It is noteworthy that as the Director, it would likely be very difficult for Plaintiff to identify anyone doing "substantially equal" work as she was at the time she served in this role.  Presumably there is only one Director at a time.  Nonetheless, the Board asserts that Plaintiff's failure to identify a comparable substantially equal job is fatal to her claim.  The Tenth Circuit, however, has concluded that the law is clear that an Equal Pay Act violation may be established even though employees whose pay is the subject of comparison perform substantially equal work at different times.  *Kenworthy v. Conoco, Inc.*, 979 F.2d 1462, 1467 (10th Cir. 1992); *Weidenbuch v. Casper Natrona County Health Dept.*, 563 F.Supp.3d 1170, 1182 (D. Wyoming 2021).  *See also County of Washington v. Gunther*, 452 U.S. 161, 179 n. 19 (1981) (Equal Pay Act provides an action for sex-based wage discrimination by women who hold jobs not currently held by men); *Gosa v. Bryce Hosp.*, 780 F.2d 917, 919 (11th Cir. 1986) ("employees whose pay is subject of comparison may hold jobs in succession as well as simultaneously"); *Patkus v. Sangamon–Cass Consortium*, 769 F.2d 1251, 1260 (7th Cir. 1985) ("salary paid to a successor who performs substantially the same work may provide a basis for an equal pay action"); *EEOC v. First Citizens Bank*, 758 F.2d 397, 402 (9th Cir.), *cert. denied*, 474 U.S. 902 (1985) ("[t]he Equal Pay Act does not require that jobs being compared be performed simultaneously; it also encompasses situations where an employee of one sex is hired for a particular job to replace an employee of the opposite sex"); *Sinclair v. Automobile Club of Okla., Inc.*, 733 F.2d 726,729 (10th Cir. 1984) (the "Act applies to situations in which an employer hires an employee of one sex for a particular job to replace an employee of the opposite sex").  Thus, Plaintiff's

comparison of her salary to that of her male successor is appropriate in this instance and can support an Equal Pay Act claim.

Similarly, the Board's assertion that Plaintiff's Equal Pay Act claim must fail because she alleges that Yeachum had <u>fewer</u> responsibilities than her is misplaced. Plaintiff alleges that her male successor had <u>fewer</u> responsibilities than her as the Director because he did not also take on the duties of 911 Addressing and Mapping or oversee the County Sign Shop all while being paid more than Plaintiff. This allegation does not undermine Plaintiffs claim, but strengthens the inference of a pay disparity. While the Board may subsequently come forward with evidence justifying Yeachum's increased salary or distinguishing his job responsibilities, at this stage of the litigation the undersigned Magistrate Judge finds that Plaintiff set forth sufficient facts to state a plausible Equal Pay Act claim.

### C. First Amendment Claim

Plaintiff asserts a claim under 42 U.S.C. § 1983 based on a violation of her right to free speech under the First Amendment. Plaintiff asserts this claim against the Board as well as the three Commissioner defendants in their individual capacities.[2] The Board asserts that Plaintiff was speaking pursuant to her job duties and not as a private citizen when she spoke about the use of CARES Act funds and she does not allege any facts supporting municipal liability under 42 U.S.C. § 1983. Although addressed second in the

---

[2] Defendants Smith, Gist, and Olive's Motion to Dismiss Plaintiff's Amended Complaint and Brief in Support [Dkt. 25] seek the dismissal of this and other claims and will be addressed in a separate Report and Recommendation filed simultaneously. *See* Docket No. 36.

Board's Motion, a preliminary issue is whether the Board can be held liable for a violation of Plaintiff's First Amendment rights under 42 U.S.C. § 1983 and *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978).

### 1. The Board's Liability under 42 U.S.C. § 1983.

"A claim pleaded under § 1983 requires (1) deprivation of a federally protected right by (2) an actor acting under color of state law." *VDARE Found v. City of Colorado Springs*, 11 F.4th 1151, 1160 (10th Cir. 2021) (internal quotation marks omitted). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1156 (10th Cir. 2016) (internal quotation marks omitted). "However, the fact that a tort was committed by an individual employed by the state does not, *ipso facto*, warrant attributing all of the employee's actions to the state." *Id*. (internal quotation marks omitted). "Rather, before conduct may be fairly attributed to the state because it constitutes action under color of state law, there must be a real nexus between the employee's use or misuse of their authority as a public employee, and the violation allegedly committed by the defendant." *Id*. (internal quotation marks omitted).

A municipality can only be held liable under 42 U.S.C. § 1983 for the actions of its employees when the action is taken pursuant to the municipality's "official policy," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (citing *Monell*., 436 U.S. at 98), or for acts it has sanctioned or ordered, *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188 (10th Cir. 2010) (citing *Pembaur*, 475 U.S. at 480). This is because a

municipality cannot be held liable simply under a theory of respondeat superior. *Pembaur*, 475 U.S. at 478; *see also Monell*, 436 U.S. at 694. "Rather, to establish municipal liability, a plaintiff must show 1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged." *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993). Municipal policy can take the form of, among other things, "the decisions of employees with final policymaking authority or the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval." *Brammer-Hoelter*, 602 F.3d at 1189.

The Amended Complaint is devoid of any specific allegations regarding the Commissioners acting under the color of law with respect to any specific policy or custom when they terminated Plaintiff. Instead, Plaintiff simply alleges that on November 30, 2020, Commissioner Smith came to her and informed her that she was terminated because the Commissioners were "relieving you of your job" and they were "just not happy." *See* Dkt. 22 at ¶¶ 14 and 64-67. While sparse, the undersigned Magistrate Judge nonetheless finds that these facts set forth the allegation that, at least by implication, the Commissioners were authorized to terminate County employees such as Plaintiff, that they exercised that authority in terminating Plaintiff, and that in doing so they were acting under the color of law. Such facts sufficiently allege a real nexus between the Commissioner's use or misuse of their authority as public employees and the violation they allegedly committed. Such facts also sufficiently allege, again by implication, that the Commissioners had final policymaking authority when it came to terminating Plaintiff and they exercised that

authority. Thus, the undersigned Magistrate Judge finds that Plaintiff states a plausible claim to hold the Board liable under *Monell*, to the extent Plaintiff can establish a violation of her First Amendment rights.

## 2. First Amendment.

As a general matter, "[t]he First Amendment limits the ability of a public employer to leverage the employment relationship to restrict, incidentally or intentionally, the liberties employees enjoy in their capacities as private citizens." *Garcetti v. Ceballos*, 547 U.S. 410, 418-19 (2006); *see also Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). The five-step *Garcetti/Pickering* analysis applies when a public employer restricts the speech of a public employee. *Garcetti*, 547 U.S. at 418–19; *Brammer-Hoelter*, 492 F.3d at 1202.[3] "First, the court must determine whether the employee speaks 'pursuant to [her] official duties.'" *Id*. (quoting *Garcetti*, 547 U.S. at 421). "If the employee speaks pursuant to [her] official duties, then there is no constitutional protection because the restriction on speech 'simply reflects the exercise of employer control over what the employer itself has commissioned or created.'" *Id*. (quoting *Garcetti*, 547 U.S. at 422). This is a question of law to be resolved by the Court. *Id*. at 1203.

---

[3] The five factors are: "(1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct." *Rock v. Levinski*, 791 F.3d 1215, 1219 (10th Cir. 2015) (citing *Garcetti*, 547 U.S. 410).

The Tenth Circuit "ha[s] taken a broad view of the meaning of speech that is pursuant to an employee's official duties." *Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 746 (10th Cir. 2010) (quoting *Thomas v. City of Blanchard*, 548 F.3d 1317, 1324 (10th Cir. 2008)). "[T]he Tenth Circuit has taken a case-by-case approach, looking both to the content of the speech, as well as the employee's chosen audience, to determine whether the speech is made pursuant to an employee's official duties." *Id*. "In general, the court has focused on whether the speech activity 'stemmed from and [was of] the type . . . that [the employee] was paid to do,' and has highlighted that the ultimate question in determining whether speech falls within an employee's official duties is 'whether the employee speaks as a citizen or instead as a government employee.'" *Id*. (first quoting *Green v. Bd. of Cty. Comm'rs*, 472 F.3d 794, 801 (10th Cir. 2007), then quoting *Brammer-Hoelter*, 492 F.3d at 1203)). Examples of protected government employee speech include "activity afforded citizens" such as communicating with newspapers or legislators, or discussing politics with a coworker. *Id*. (quoting *Green*, 472 F.3d at 800). In contrast, "a government employee's speech is not protected when there is 'no relevant analogue to speech by citizens who are not government employees.'" *Id*. (quoting *Garcetti*, 547 U.S. at 424). "[S]peech pursuant to the employee's duty to report a particular activity is usually within that employee's official duties under *Garcetti*/*Pickering*." *Id*. at 746–47. "[S]peech directed at an individual or entity within a[n] employee's chain of command is often found to be pursuant to that employee's official duties. . . . But an employee's decision to go outside of their ordinary chain of command does not necessarily insulate their speech." *Id*. at 747.

The Board asserts that Plaintiff was speaking pursuant to her job duties and not as a private citizen when she spoke about the use of CARES Act funds. Plaintiff alleges that: at some point during her employment she held the title of the County Grant Writer; as the County Grant Writer, Plaintiff worked on a federal grant under the CARES Act in or around September or October, 2020; the Commissioners commented that they wanted to use the CARES Act grant money for roads, to remodel the courthouse and for other non-COVID-related items; Plaintiff informed the Commissioners that CARES Act grant funds had to be used for very specific COVID-related reimbursements; the Commissioners were "dismissive" of Plaintiff's statements about the allowed uses of the CARES Act grant funds; and Plaintiff was terminated after a November 30, 2020 Board meeting during which it was announced that Plaintiff had acquired a $1.2 million CARES Act grant for the County. *See* Dkt. 22 at ¶¶ 11 and 61-65.

The undersigned Magistrate Judge finds that Plaintiff does not allege any facts supporting a plausible claim of a violation of her First Amendment rights. In particular, Plaintiff does not allege any facts supporting a claim that she was acting in any capacity other than as the County Grant Writer when she informed the Commissioners of the appropriate uses of the CARES Act grant funds. Having completed the grant application as the Grant Writer, it was squarely within Plaintiff's job to know and to understand the permitted uses of such funds and to inform the Commissioners of these facts. Informing the Board of appropriate uses of the grant funds was one of the tasks for which Plaintiff was paid to do. While Plaintiff intimates that the Commissioners wanted to use the funds improperly, she offers only a threadbare conclusory allegation that the Commissioners

were "dismissive" of her statement about the appropriate uses of the funds in an apparent attempt to create innuendo as to the motivation for her termination. Even if such conclusory allegation were sufficient to support the fourth *Garcetti* element that her First Amendment statements were a motivating factor in her termination, which it does not, it does not overcome the fact that her statements were made in the normal course of and as part of her official duties as the Grant Writer. *See Garcetti*, 547 U.S. at 421-22 (speech that "owes its existence to a public employee's professional responsibilities" is generally not protected). Therefore, the undersigned Magistrate Judge finds that Plaintiff does not set forth facts sufficient to state a plausible violation of her First Amendment Rights claim.

### D. Age Discrimination Claim

Under the Age Discrimination in Employment Act ("ADEA"), "[i]t shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To state a prima facie case for an ADEA claim, a plaintiff must show: 1) she is a member of the class protected by the statute; 2) she suffered an adverse employment action; 3) she was qualified for the position at issue; and 4) she was treated less favorably than others not in the protected class. *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir.1998). Although often referred to as a "but-for" causation factor, an employer may be held liable for age discrimination even if other factors contributed to the termination as long as age was the factor that made a difference." *Jones v. Oklahoma City Public Schools*, 617 F.3d 1273, 1277–78 (10th Cir.2010). *Jones* did not abrogate the "but-for" causation requirement,

rather, it defined that requirement in holding that age need not be the "sole" motivating factor: "[i]nstead, an employer may be held liable under the ADEA if other factors contributed to its taking an adverse action, as long as 'age was the factor that made a difference.'" *Id.* at 1277 (quoting *Wilkerson v. Shinseki*, 606 F.3d 1256, 1266 (10th Cir.2010)).

The Board asserts Plaintiff's ADEA claim must be dismissed because it is supported by only threadbare recitation of the elements such that Plaintiff does not allege she was doing satisfactory work or that she was replaced by a younger person and that her termination was motivated at least in part by her age. In support of her ADEA claim, Plaintiff alleges that: she was an outstanding employee, receiving praise for her job performance, merit pay increases, and was not written up; she was terminated on November 30, 2020; she was 49 at the time of her termination; and her replacement "is believed to be younger than" and less qualified than her. *See* Dkt. 22 at ¶¶ 8, 12, 65-66 and 70-71. Plaintiff further alleges that her termination was pretextual and that "[b]ut for Plaintiff's age, she would not have been fired." *Id.* at ¶ 104.

Plaintiff plainly alleges that she was 49 at the time she was terminated and was a member of a protected class, she suffered an adverse employment action when she was terminated, and she was qualified for the position at issue. The undersigned Magistrate Judge, however, finds that Plaintiff does not sufficiently allege that age was a factor in her termination, much less the factor that made a difference. Instead, Plaintiff merely offers the formulaic recitation of the elements and conclusory statement that but for her age she would not have been terminated. As such, Plaintiff does not allege well-pled facts upon

which the Court must rely. *See Iqbal*, 556 U.S. at 678 (when ruling on a motion to dismiss for failure to state a claim a court should assume the truth of all well-pled facts, but such assumption is inapplicable when the complaint relies on recital of the elements of a cause of action supported by mere conclusory statements). Further, Plaintiff is even equivocal as to whether her replacement is younger than her, alleging only that it "is believed" he is younger and she does not allege how much younger he is believed to be. While, as previously noted, Plaintiff does not need to allege age was the sole factor in her termination, she must allege it was the factor that made a difference. *See Jones*, 617 F.3d at 1277. Plaintiff does not set forth any facts alleging her age was any factor in her termination. As a result of her failure to do so, Plaintiff's conclusory allegations are merely formulaic and do not nudge her ADEA claim across the line from conceivable to plausible. Therefore, the undersigned Magistrate Judge finds that Plaintiff does not set forth facts sufficient to state a plausible ADEA claim.

### E. Disabilities Claim

Disability discrimination under the Americans with Disabilities Act and the Americans with Disabilities Act Amendments Act (collectively, the "ADA") includes "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). This prohibition is known as the "association provision" of the ADA. *Trujillo v. PacifiCorp*, 524 F.3d 1149, 1154 (10th Cir. 2008) (citing *Den Hartog v. Wasatch Acad.*, 129 F.3d 1076, 1082 (10th Cir. 1997)).

26

To state a prima facie claim for ADA association discrimination, a plaintiff must show that (1) she was "qualified" for the job at the time of the adverse employment action; (2) she was subjected to adverse employment action; (3) she was known by her employer at the time to have a relative or associate with a disability, and (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision. *See Den Hartog*, 129 F.3d 1085; *Trujllo*, 524 F.3d at 1154. "A family relationship is the paradigmatic example of a 'relationship' under the association provision of the ADA." *Den Hartog*, 129 F.3d at 1082 (citing 29 C.F.R. § 1630.8).

The Board asserts Plaintiff's claim must fail because she does not allege she was terminated under circumstances giving rise to an inference that her daughter's disability was the reason for her termination. To support her association discrimination claim, Plaintiff alleges that: her daughter suffers from Spina Bifida; during her employment up until late 2017, when she reported to Director Davidson, she was allowed to take leave as needed to care for her daughter; around the time Plaintiff applied for the Director position in late 2017, Commissioner Gist asked her whether her daughter's medical condition would be an issue effecting her ability to perform the full-time interim job of Director; once Plaintiff was hired as Director, she was told by the Commissioners that she had to be in the office from 8:00 a.m. to 4:30 p.m. Monday through Friday and be on call 24 hours a day, 7 days a week; as Director, Plaintiff was told she could not leave the office for lunch unless there was someone who could fill in for her; Plaintiff informed the Commissioners that it was necessary that she take off work on occasion to care for her daughter due to her

daughter's illness; the Commissioners "were unsympathetic, discouraging Plaintiff from taking leave" because there was no one to perform her job in her absence; and in light of the Commissioners' demands, Plaintiff limited the amount of time she took off to care for her daughter, although Plaintiff took some unspecified amount time off to care for her daughter. *See* Dkt. 22 at ¶¶ 17, 24, 33-34, and 58-60. Plaintiff also alleges she was terminated under circumstances giving rise to an inference of discrimination. *Id*. at ¶ 109.

Plaintiff alleges and the Board does not appear to dispute the first three elements of an association discrimination claim. Thus, the issue is whether Plaintiff alleges sufficient facts that her termination occurred under circumstances giving rise to an inference of her daughter's disability being a factor in her termination. The undersigned Magistrate Judge finds that Plaintiff does not plead facts necessary to satisfy this fourth element. Although Plaintiff's Response discusses alleged facts related to her working conditions and the Commissioners being "unsympathetic" to her need to take time off due to her daughter's disability, the Amended Complaint relies exclusively on her termination as the "adverse employment action" upon which she bases her claim. *See* Dkt. 22 at ¶ 109. In doing so, however, Plaintiff offers nothing more than the threadbare recital of the element that she was terminated "under circumstances giving rise to an inference of discrimination." Such a conclusory allegation does not allege well-pled facts upon which the Court must rely. *See Iqbal*, 556 U.S. at 678. Plaintiff's conclusory allegation is merely formulaic and does not nudge her association discrimination claim across the line from conceivable to plausible.

28

Moreover, any attempt by Plaintiff to allege her working conditions satisfy the "adverse employment action" would fall short based on the facts alleged. First, there is no ADA liability for the Board for failing to accommodate Plaintiff for her daughter's disability. An accommodation claim is not available because the "only two provisions requiring 'reasonable accommodation' in Title I of the ADA-suggests that only job applicants or employees, but not their relatives or associates, need be reasonably accommodated." *Den Hartog*, 129 F.3d at 1084. *See* 42 U.S.C. §§ 12112(b)(5)(A); 12112(b)(5)(B). Second, the alleged facts regarding Plaintiff's changed working conditions do not adequately plead that an adverse employment action occurred. The Tenth Circuit has held that, generally, "only acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits will rise to the level of an adverse employment action." *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1040 (10th Cir. 2011) (citation and internal quotation marks omitted). *See also Hillig v. Rumsfeld*, 381 F.3d 1028, 1031 (10th Cir. 2004) (actions that cause "harm to future employment prospects," such as a negative job reference, may also constitute an adverse employment action). Thus, "although the term is not confined to, for example, monetary losses in the form of wages or benefits, a mere inconvenience or an alteration of job responsibilities does not constitute an adverse employment action." *C.R. England*, 644 F.3d at 1040 (citations and internal punctuation marks omitted). "Accordingly, a plaintiff must show that the alleged adverse action caused more than a '*de minimus* harm' to or a '*de minimus* impact' upon [her] job opportunities or status." *Id*. (quoting *Hillig*, 381 F.3d at

29

1033). Thus, neither Plaintiff's conclusory allegation that she was terminated "under circumstances giving rise to an inference of discrimination" nor her allegations regarding her changed working conditions support a plausible claim of an adverse action.

Lastly, Plaintiff fails to allege that any issues with her daughter's disability were raised near or proximate to her termination. Plaintiff alleges the Commissioners were aware of her daughter's condition and the potential time off work it might cause her at least as early as late 2017. Plaintiff was not terminated, however, until November 30, 2020. "[T]emporal proximity can contribute to an inference of discrimination." *Trujillo* 524 F.3d at 1157. *See also*, *Butler v. City of Prairie Vill., Kan.*, 172 F.3d 736, 749 (temporal proximity between ADA plaintiff's request for accommodation and decline in his work evaluations and satisfaction with his work performance contributed to discriminatory inference). The closer in time a protected action is followed by an adverse action, the more likely temporal proximity will support an inference of discrimination. *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir.1999). Here, Plaintiff offers no facts regarding the temporal proximity of the knowledge of the Board of her daughter's disability and any related time off with her termination. Therefore, for the reasons set forth above, the undersigned Magistrate Judge finds that Plaintiff does not set forth facts sufficient to state a plausible ADA claim.

### F. Family and Medical Leave Claim

Under the Family and Medical Leave Act of 1993 ("FMLA"), qualifying employees are guaranteed 12 weeks of unpaid leave each year due to, *inter alia*, serious health issues or to take care of a family member with a serious health issue. 29 U.S.C. § 2601, *et seq*.

Leave must be granted "when medically necessary" and may be taken on an intermittent or part-time basis. *Id*. at § 2612(a)(1). The FMLA makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of" FMLA rights and violators are subject to consequential damages and appropriate equitable relief. *Id*. §§ 2615(a)(1) & 2617(a)(1). Plaintiff asserts her FMLA claim under two theories of relief: (1) interference and (2) retaliation.

### 1. Interference.

To state a prima facie FMLA interference claim, a plaintiff must plead that: (1) she was entitled to FMLA leave; (2) an adverse action by her employer interfered with her right to take FMLA leave and (3) this adverse action was related to the exercise or attempted exercise of the employee's FMLA rights. *DePaula v. Easter Seals El Mirador*, 859 F.2d 957, 978 (10th Cir. 2017) (citing *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1226 (10th Cir. 2013)). "A deprivation of these rights is a violation regardless of the employer's intent. . . ." *Id*. (quoting *Tabor*, 703 F.3d at 1226-27).

The Board asserts that Plaintiff fails to allege any fact that she was prejudiced by any denial of FLMA leave, that the Board prevented her from taking any FMLA leave or that she was entitled to further leave at the time of her termination. In support of her FMLA interference claim, Plaintiff alleges that: her daughter was born with Spina Bifida and required her to take intermittent leave; the Board was aware at least as of late 2017 of her daughter's medical condition; she had to be in the office from 8:00 a.m. to 4:30 p.m. Monday through Friday and on call 24 hours a day and she could not leave the office for lunch unless there was someone who could fill in for her; when she missed several days of

work in March 2020 she was not offered FMLA leave for her time off; she informed the Board that she had to take off work on occasion to care for her daughter due to her daughter's condition; the Board did not inform her of her right to intermittent leave under the FMLA; the Board was unsympathetic and discouraged her from taking leave, telling her she had to be in the office because no one could perform her job in her absence; and because of the Board's demands, she limited the amount of time she took off to care for her daughter, although she did take some unspecified amount of time off to care for her daughter at unspecified times. *See* Dkt. 22 at ¶¶ 17, 24, 33-34, and 57-60. Plaintiff also alleges that the Board interfered with her FMLA leave rights by engaging in acts intended to have a chilling effect on her use of these rights and interfered with her rights by terminating her. *Id*. at ¶ 115.

First, as a threshold to stating a claim for interference under § 2615, Plaintiff must allege she was prejudiced by the violation. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002). The undersigned Magistrate Judge finds that Plaintiff adequately does so. Plaintiff alleges that, because of the Board's discouragement of her taking leave to care for her daughter, she took less leave than she otherwise would have and to which she was entitled under FMLA. While vague, at this stage Plaintiff nonetheless alleges facts sufficient to make it plausible that she was prejudiced by the denial of her FMLA rights, assuming she can satisfy the remaining elements of her interference claim.

Second, although the FMLA does not define "interference," the Department of Labor regulations provide that "interfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an

employee from using such leave." 29 C.F.R. § 825.220(b). The Board argues that any discouragement must provide "a powerful disincentive" for taking FMLA leave to be actionable, citing *Coleman v. Blue Cross Blue Shield of Kan.*, 487 F.Supp.2d 1225 (D.Kan. 2007). The *Coleman* case, however, simply notes that "[i]f an employer provides a powerful disincentive for taking FMLA leave, it constitutes interference." *Id.* at 1245, citing *Mardis v. Cent. Nat'l Bank & Trust of Enid*, 1999 WL 218903, *2 (10th Cir., April 15, 1999). Indeed, in reversing the granting of summary judgment to defendant, the *Mardis* court simply held that "[i]nforming an employee that she would be irrevocably deprived of all accrued sick leave and annual leave as a condition of taking leave under the FMLA would operate as a powerful disincentive to assertion of that employee's rights under the FMLA." 1999 WL 218903 at *2. The Board also cites to *Coleman's* discussion of *McKinzie v. Sprint/United Management Co.*, 2004 WL 2634444 (D. Kan. Nov. 16, 2004), in which the court discussed various actions that were found to be insufficient to be considered powerful disincentives to have interfered with FMLA rights. Both *Coleman* and *McKinzie* involved motions for summary judgement in which it was undisputed that the employers had approved numerous requests for FMLA leave and that various sarcastic or derogatory comments about taking leave did not rise to the level of chilling the plaintiffs' requests for leave in large part because leave was approved numerous times in both cases. Thus, although *Coleman* and *McKinzie* support the conclusion that a "powerful disincentive" would constitute interference, they do not define what constitutes a powerful disincentive, which appears to be a very fact-specific inquire that is not appropriate for the Court to resolve at this stage of the case.

33

Plaintiff also asserts that the Board's failure to notify her of her FMLA rights alone constitutes "interference."  Although Plaintiff cites *Tate v. Farmland Industries, Inc.*, 268 F.3d 989, 997 (10th Cir. 2001), for this proposition, the regulation upon which *Tate* relied, 29 C.F.R. § 825.208(a), was subsequently modified.[4]  Nonetheless, there are numerous other notice provisions in the FMLA regulations requiring Plaintiff to be notified of her FMLA rights.  *See e.g.*, 29 C.F.R. §§ 825.300, 825.302(d) and 825.305.  Moreover, the "[f]ailure to follow the notice requirements set forth in this section may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights."  *Id.* at § 825.300(e).  *See also, Dukes v. LeFlore County*, 2018 WL 4781184 (E.D. Okla., October 3, 2018) (concluding that the employer's failure to provide the required notices was interference).  Additionally, the Board does not address Plaintiff's argument regarding its failure to notify her of her FMLA rights constituting interference and, therefore, waived any objection to it.  *See e.g., Cowden*, __ F.Supp.3d __, 2022 WL 4349620, *7.

Based on the foregoing, the undersigned Magistrate Judge finds that at this stage of the case Plaintiff sets forth facts to sufficiently state a plausible claim that the Board's failure to notify her of her FMLA rights and its discouragement of her using leave was interference with her FMLA rights.  Plaintiff alleges that the Board discouraged her from taking leave, including informing her she could not take time off because no one else could perform her job, and that she in fact took less time than she otherwise would have and to which she was entitled but for this discouragement.  Unlike *Coleman* and *McKinzie*, which

---

[4] On November 17, 2008, the provisions of Subpart 208 were modified and renumbered as 29 C.F.R. § 825.301. 73 Fed. Reg. 67934, 67983 (Nov. 17, 2008).

involved motions for summary judgment, Plaintiff never asked for or was approved for FMLA leave. Additionally, while somewhat vague, Plaintiff nonetheless also alleges that the Board failed to notify her of her FMLA rights and such failure to notify plausibly sets forth an interference claim.

Lastly, Plaintiff must set forth facts that the Board's adverse action was related to the exercise or attempted exercise of her FMLA rights. To the extent Plaintiff is asserting an interference claim based on the Board's failure to notify her of her FMLA rights and its interference by discouraging her from taking FMLA leave, the undersigned Magistrate Judge finds Plaintiff has stated a plausible interference claim. As previously stated, Plaintiff alleges adverse consequence due to the Board's interference when she took less leave to care for her daughter than she otherwise would have and to which she was entitled under the FMLA. However, to the extent Plaintiff is asserting her termination is an adverse action related to her exercise of her FMLA rights, then Plaintiff's claim fails. Plaintiff alleges no facts that her termination was plausibly related to her taking of any leave or requesting to take any leave provided by the FMLA. Therefore, for the reasons set forth above, the undersigned Magistrate Judge finds that Plaintiff sets forth facts sufficient to state a plausible FMLA interference claim regarding the failure to notify her of her FMLA rights and the discouragement of her exercising such rights but not as to her termination.

**2. Retaliation**.

To state a prima facie claim for FMLA retaliation, a plaintiff must show that: "(1) she engaged in a protected activity; (2) [the employer] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection

between the protected activity and the adverse action." *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282 (10th Cir. 2007).

The Board asserts that Plaintiff fails to allege any facts demonstrating there is a causal connection between her termination and any exercise or attempted exercise of FMLA leave. Plaintiff identifies the facts she alleges relating to her work hours and the Board discouraging her from taking leave. *See* Dkt. 26 at p. 18. Additionally, Plaintiff points to her allegations that she took leave in March 2020 due to her kidney stones and she was terminated on November 20, 2020 without being given a reason.

As an initial matter, it is not clear to the undersigned Magistrate Judge that Plaintiff alleges she engaged in a protected activity. Although she alleges she took some leave, including in March 2020, she also specifically alleges that she was not notified of her FMLA rights and that FMLA leave was not offered to her. *See* Dkt. 22 at ¶¶ 57 and 59. Thus, it does not appear that Plaintiff alleges she took FMLA leave or otherwise engaged in a protected activity. *See Campbell*, 478 F.3d at 1287 ("a retaliation claim may be brought when the employee successfully took FMLA leave, was restored to her prior employment status, and was adversely affected by an employment action based on incidents post-dating her return to work); *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1136-38 (10th Cir. 2003) (where plaintiff was restored to her prior position after FMLA leave, but soon terminated for alleged attendance problems following her return); *Dukes*, 2018 WL 4781184 at *5 (plaintiff established that he took extended leave covered by the FMLA).

Even assuming Plaintiff adequately alleges she engaged in a protected activity, however, she fails to allege a causal connection between such protected activity and her termination.  Plaintiff simply alleges that she took off some time during unspecified dates to care for her daughter and then took four days in March 2020 due to her kidney stones, but she does not allege any facts connecting such leave to her termination on November 30, 2020 – nearly eight months after her last alleged leave.  None of the cases Plaintiff cites support an inference of retaliation for such a gap of time between any protected activity and the adverse action.  Similarly, Plaintiff's conclusory allegation that the Board retaliated against her by terminating her does not allege well-pled facts upon which the Court must rely.  *See Iqbal*, 556 U.S. at 678.  Therefore, the undersigned Magistrate Judge finds that Plaintiff does not set forth facts sufficient to state a plausible FMLA retaliation claim.

### G. Fair Labor Standards Act Claim

Plaintiff alleges she is entitled to compensatory time in lieu of cash overtime payments pursuant to the Fair Labor Standards Act ("FLSA").  29 U.S.C. § 207(o).  The FLSA provides:

> (1) Employees of a public agency which is a State, a political subdivision of a State, or an interstate governmental agency may receive, in accordance with this subsection and in lieu of overtime compensation, compensatory time off at a rate not less than one and one-half hours for each hour of employment for which overtime compensation is required by this section.
> (2) A public agency may provide compensatory time under paragraph (1) only—
> (A) pursuant to—
> (i) applicable provisions of a collective bargaining agreement, memorandum of understanding, or any other agreement between the public agency and representatives of such employees; or

(ii) in the case of employees not covered by subclause (i), an agreement or understanding arrived at between the employer and employee before the performance of the work; . . .

*Id*. "An employee who has accrued compensatory time off authorized to be provided under paragraph (1) shall, upon termination of employment, be paid for the unused compensatory time at a rate of compensation not less than—(A) the average regular rate received by such employee during the last 3 years of the employee's employment, or (B) the final regular rate received by such employee, whichever is higher. . . ." *Id*. at § 207(o)(4).

The Board asserts Plaintiff's FLSA claim must be dismissed because she does not allege that any earned compensatory time was not used by Plaintiff for leave she took, that she performed the work for which she claims compensatory time and that she is a non-exempt employee under FLSA. In support of her FLSA claim, Plaintiff alleges that: the Board promised to pay Plaintiff with compensatory time in lieu of cash overtime payments prior to her working those hours; the County had policies that promised to provide employees with compensatory time; in or around March 2019, the Commissioners told Plaintiff she was entitled to compensatory time; County employees are paid their accrued unused compensatory time upon separation from employment with the County; the County's employee handbook requires only non-exempt employees to record their hours worked; when Plaintiff became the Director, the Board required her to submit weekly time sheets showing 40 hours per week; at the time of her termination, Plaintiff had approximately 1,337 hours of accrued unused compensatory time; and the Board failed to pay her for her accrued unused compensatory time. *See* Dkt. 22 at ¶¶ 31, 80-81, 120-121, and 123.

38

The undersigned Magistrate Judge first examines whether Plaintiff adequately pleads she is a non-exempt employee under the FLSA.  The FLSA provides that the provisions of § 207 shall not apply with respect to "any employee employed in a bona fide executive, administrative, or professional capacity. . . ."  29 U.S.C. § 213(a)(1). Exemptions to the FLSA are to be narrowly construed; the employer must show the employees fit "plainly and unmistakenly within [the exemption's] terms."  *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960); *Reich v. Wyoming*, 993 F.2d 739, 741 (10th Cir. 1993); *Ackerman v. Coca–Cola Enters.*, 179 F.3d 1260, 1264 (10th Cir. 1999) (the employer bears the burden of proving that the employee fit "plainly and unmistakably within the exemption's terms") (quotation and alteration omitted).  Plaintiff alleges that she was required to keep weekly times sheets showing she worked 40 hours per week and that the County employee handbook required only non-exempt employees to record their hours.  Thus, the undersigned Magistrate Judge finds that Plaintiff adequately alleges she is a non-exempt employee under the FLSA.

As to the Board's assertion that Plaintiff did not allege that she earned compensatory time or did not use such time for the leave she took, the undersigned Magistrate Judge finds those issues are not properly resolved at this stage on a motion to dismiss.  Plaintiff alleges that she was eligible under the FLSA, had an agreement or understanding with the County and had been told by the Commissioners that she would be paid compensatory time, she earned such time, and was not paid for such time after her termination from the County. Accordingly, the Court must accept all these well-pled allegations as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the claimant.

*Twombly*, 550 U.S. at 555. Therefore, the undersigned Magistrate Judge finds that Plaintiff does set forth facts sufficient to state a plausible FLSA claim.

### H. Oklahoma Protection of Labor Act Unpaid Wages Claim

Plaintiff asserts a claim under the Oklahoma Protection of Labor Act ("OPLA") due to the Board's alleged failure to pay her for all earned and accumulated vacation time. Under the OPLA, "[e]very employer in this state shall pay all wages due their employees, . . . at least twice each calendar month on regular paydays designated in advance by the employer. . . . " 40 O.S. § 165.2. "'Wages' means compensation owed by an employer to an employee for labor or services rendered, including salaries, commissions, holiday and vacation pay, overtime pay, severance or dismissal pay, bonuses and other similar advantages agreed upon between the employer and the employee, which are earned and due, or provided by the employer to his employees in an established policy, whether the amount is determined on a time, task, piece, commission or other basis of calculation. . . ." 40 O.S. § 165.1(4). Moreover:

> Whenever an employee's employment terminates, the employer shall pay the employee's wages in full, less offsets and less any amount over which a bona fide disagreement exists, as defined by Section 165.1 of this title, at the next regular designated payday established for the pay period in which the work was performed either through the regular pay channels or by certified mail postmarked within the deadlines herein specified if requested by the employee, unless provided otherwise by a collective bargaining agreement that covers the employee.

*Id*. at 162.3(A).

The Board appears to only challenge Plaintiff's claim for liquidated damages in the Amended Complaint, asserting that Plaintiff does not allege facts that the Board acted

40

willfully in withholding any wages. As previously noted, a party "waive[s] [an] issue by failing to make any argument or cite any authority to support his assertion." *Cowden*, __ F.Supp.3d __, 2022 WL 4349620, *7.

Notwithstanding any issue of the Board's waiver, the undersigned Magistrate Judge finds that Plaintiff alleges facts sufficient to state a plausible OPLA claim. Plaintiff alleges that: the County had a policy in the employee handbook of paying out accrued unused vacation and/or annual leave to employees upon separation of employment; the accrued unused leave she earned was not subject to any offsets or bona fide disagreements; and Plaintiff was not paid for earned and accumulated vacation leave after she was terminated. *See* Dkt. 22 at ¶¶ 77-79 and 126-127. Thus, Plaintiff alleges she had accrued unused vacation time that was not disputed and such benefit was not paid upon her termination.

Plaintiff alleges she is entitled to liquidated damages because the Board acted in willful violation of the law. *Id*. at ¶ 128. The OPLA provides that:

> if an employer fails to pay an employee wages as required under subsection A of this section, such employer shall be additionally liable to the employee for liquidated damages in the amount of two percent (2%) of the unpaid wages for each day upon which such failure shall continue after the day the wages were earned and due if the employer willfully withheld wages over which there was no bona fide disagreement; or in an amount equal to the unpaid wages, whichever is smaller. . . .

40 O.S. 165.3(B). While somewhat conclusory, Plaintiff nonetheless alleges that the Board acted willfully in not paying her for her accrued unused vacation time and that there was no offset or bona fide disagreement over the amount owed. Moreover, Plaintiff correctly notes that allegations of a party's state of mind, including malice, can be generally alleged. *See e.g.*, *United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1171

(10th Cir. 2010); Fed. R. Civ. P. 9(b). The undersigned Magistrate Judge finds that the Amended Complaint, viewed in its entirety, sufficiently alleges that the Board acted willfully in order to assert a claim for liquidated damages. Therefore, the undersigned Magistrate Judge finds that Plaintiff does set forth facts sufficient to state a plausible OPLA unpaid wages claim, including a claim for liquidated damages.

## I. Breach of Contract Claim

Plaintiff asserts a claim for breach of contract based on the Board's alleged failure to pay her for her accrued unused vacation and compensation time after her termination. The Board argues for the dismissal of this claim because Plaintiff did not allege any facts that the compensatory time was contractually agreed to or that it would be paid to her upon her termination. Although acknowledging employer policies and handbooks can form contracts with employees, the Board argues that Plaintiff fails to allege any policy was in effect at the time she performed the work. In support of her compensatory time claim, Plaintiff alleges that: the Board promised to pay Plaintiff with compensatory time in lieu of cash overtime payments prior to her working those hours; the County had policies that promised to provide employees with compensatory time; in or around March 2019, the Commissioners told Plaintiff she was entitled to compensatory time; County employees are paid their accrued unused compensatory time upon separation from employment with the County; at the time of her termination, Plaintiff had approximately 1,337 hours of accrued unused compensatory time; and the Board failed to pay her for her accrued unused compensatory time. *See* Dkt. 22 at ¶¶ 31, 80-81, 120-121, and 123. In support of her claim for accrued unused vacation time, Plaintiff alleges that: the County had a policy in the

42

employee handbook of paying out accrued unused vacation and/or annual leave to employees upon separation of employment; the accrued unused leave she earned was not subject to any offsets or bona fide disagreements; and Plaintiff was not paid for earned and accumulated vacation leave after she was terminated.  *See* Dkt. 22 at ¶¶ 77-79 and 126-127.

The parties agree that Plaintiff was an at-will employee.  The Oklahoma Supreme Court has recognized a claim for breach of implied contract in the employment setting. *Hinson v. Cameron*, 742 P.2d 549, 555 (Okla. 1987).  Likewise, as acknowledged by the Board, Oklahoma law recognizes that an employee handbook/personnel manual may form the basis of an implied contract between an employer and its employees.  *See Russell v. Bd. of Cty. Comm'rs, Carter Cty.*, 952 P.2d 492, 501 (Okla. 1998); *Langdon v. Saga Corp.*, 569 P.2d 524, 527-28 (Okla. Civ. App. 1976); *Minor v. Mid-America Door Co.*, 68 P.3d 212 (Okla. Civ. App. 2002) ("implied contractual provisions may restrict an employer's freedom to discharge an employee at will, and that such restrictions may arise from employee manuals, oral assurances, and the like").  However, "[t]wo limitations on the scope of implied contracts via an employee handbook stand identified by extant caselaw: (1) the manual only alters the at-will relationship with respect to **accrued benefits** and (2) the promises in the employee manual must be in definite terms, not in the form of vague assurances." *Russell*, 952 P.2d at 502 (emphasis in original).

Based on facts alleged in the Amended Complaint and presuming they are true and construing them in the light most favorable to Plaintiff, the undersigned Magistrate Judge finds that Plaintiff alleges sufficient facts to state a plausible breach of implied employment

43

contract claim. Plaintiff alleges that the employee manual and/or County policies provide for the payment of accrued unused compensatory and vacation time upon termination. At this stage, Plaintiff's allegation regarding the employee manual and policy terms is sufficiently definite. Plaintiff also alleges she accrued such benefits for which she was not paid upon her termination. Thus, Plaintiff alleges facts sufficient at this stage that a contract existed as to accrual and payment of such benefits, the Board breached that contract when it did not pay her the accrued unused benefits upon her termination and Plaintiff suffered damages as result from the breach. *See e.g.*, *Digital Design Group, Inc. v. Information Builders, Inc.* 24 P.3d 834, 843 (Okla. 2001). The Board's arguments that Plaintiff must prove when the manual or policies were in place and whether such policies were altered are fact issues that are inappropriate to consider at this stage. At a minimum, Plaintiff generally alleges the policies were in place before and when she was terminated and she accrued unused benefits for which she was not paid. Any argument by the Board that Plaintiff did not accrue all the benefits she alleges is a fact question that the Board may dispute later in the litigation but not at this stage..

Plaintiff also argues in her Response that the Board waived any objection to her breach of contract claim because, although it was asserted in the original Complaint, the Board did not move to dismiss it in its first motion to dismiss. *See* Dkt. 17. Plaintiff is presumably arguing that Federal Rule of Civil Procedure 12(g)(2) bars the Board from raising its argument in the Motion to the breach of contract because it failed to raise it in its previous motion to dismiss. Even assuming arguendo that Rule 12(g)(2) could bar the Board's argument on the breach of contract claim in this Motion, the undersigned

Magistrates finds that the Motion fails on this claim on the merits and it is not necessary to address the waiver issue. *See Miller v. Mullin*, 354 F.3d 1288, 1297 (10th Cir.2004) (per curiam) (declining to address issues involving procedural default "[i]n the interest of judicial economy" "'because the case may be more easily and succinctly affirmed on the merits'" (citations omitted)). Therefore, the undersigned Magistrate Judge finds that Plaintiff alleges sufficient facts to state a plausible breach of implied employment contract claim.

## G. *Burk* Tort Claim

Plaintiff asserts a "*Burk* Tort" based on her allegation that she was terminated in retaliation for opposing the Commissioners intent to misuse public funds. In *Burk v. K–Mart Corp.*, 770 P.2d 24 (Okla. 1989), the Oklahoma Supreme Court "recognized an actionable common-law tort for an at-will employee's discharge in contravention of a clear mandate of public policy." *Darrow v. Integris Health, Inc.*, 176 P.3d 1204, 1208 n.8 (Okla. 2008). This "tightly circumscribed" exception to the employment at-will doctrine applies "where an employee is discharged for refusing to act in violation of an established and well-defined public policy or for performing an act consistent with a clear and compelling public policy." *Burk*, 770 P.2d at 29. To plead a viable *Burk* tort claim, a plaintiff must establish: "(1) an actual or constructive discharge (2) of an at-will employee (3) in significant part for a reason that violates an Oklahoma public policy goal (4) that is found in Oklahoma's constitutional, statutory, or decisional law or in a federal constitutional provision that prescribes a norm of conduct for Oklahoma and (5) no statutory remedy

exists that is adequate to protect the policy goal." *Kruchowski v. Weyerhaeuser Co.*, 202 P.3d 144, 153 (Okla.2008).

The Board asserts Plaintiff's *Burk* claim fails because she does not allege a violation of the third element, a state-declared public policy. In particular, the Board asserts Plaintiff does not allege a clear and compelling public policy the Board violated, she was a whistleblower, or any misuse of public funds or other unlawful activities. Although in her Response to the Motion Plaintiff argues that she alleges, *inter alia*, the Commissioners "made clear" and had the "stated intent" of their desire to use the grant money improperly, *see* Dkt. 24 at p. 24, Plaintiff's actual allegations in the Amended Complaint are far more restrained. In the Amended Complaint Plaintiff alleges only that: at some point during her employment she held the title of the County Grant Writer; as the County Grant Writer, Plaintiff worked on a federal grant under the CARES Act in or around September or October, 2020; the Commissioners commented that they wanted to use the CARES Act grant money for roads, to remodel the courthouse and for other non-COVID-related items; Plaintiff informed the Commissioners that CARES Act grant funds had to be used for very specific COVID-related reimbursements; the Commissioners were "dismissive" of Plaintiff's statements about the allowed uses of the CARES Act grant funds; and Plaintiff was terminated after a November 30, 2020 Board meeting during which it was announced that Plaintiff had acquired a $1.2 million CARES Act grant for the County. *See* Dkt. 22 at ¶¶ 11 and 61-65. Plaintiff also cites in her Amended Complaint to *United States ex rel. Williams v. City of Elk City*, 2009 WL 10675671 (W.D. Okla., Feb. 18, 2009) and *Brewer*

*v. Baptist's Inc.*, 2013 WL 5000933 (W.D. Okla., Feb. 11, 2013) as support for the claim that the misuse of public funds can support a *Burk* claim. *See* Dkt. 22 at ¶ 136.

As discussed below, the undersigned Magistrate Judge finds that Plaintiff does not allege facts supporting the third element of her *Burk* claim. Plaintiff does not allege any facts indicating she was either a whistleblower or took some action to stop an actual or intended misuse of public funds. At most, Plaintiff alleges that, as the grant writer, she had knowledge regarding the permitted uses of the grant funds and informed the Commissioners that the projects for which they indicated they wanted to use the CARES Act grant funds were impermissible. Plaintiff thus offers nothing more than *vague innuendo* that by being "dismissive" of her statement of the proper uses of the grant funds, the Commissioners did or intended to misuse the grant funds. Plaintiff alleges no *facts*, however, supporting a plausible claim that the Commissioners did in fact intend to or did use the grant funds improperly. Similarly, Plaintiff's allegation that the Commissioners had a "stated intent" to misuse the grant funds is simply conclusory and does not allege well-pled facts upon which the Court must rely. *See Iqbal*, 556 U.S. at 678. Plaintiff also does not allege any fact supporting a plausible claim that she was terminated in significant part because of the advice she provided the Commissioners on the proper uses of the grant funds. Again, her allegation that the Commissioners were "dismissive" does not allege a nexus between her advice, even if it could be construed as engaging in a protected action, any actual or intended misuse of the grant funds, and her termination. Therefore, the undersigned Magistrate Judge finds that Plaintiff does not set forth facts sufficient to state a plausible *Burk* claim.

47

## IV.    LEAVE TO FURTHER AMEND THE AMENDED COMPLAINT

At various times in her Response, Plaintiff informally requests leave to further amend her Amended Complaint if claims are dismissed. Federal Rule of Civil Procedure 15(a)(2) provides, in pertinent part, that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Whether to grant leave to amend is within the trial court's discretion. *Woolsey v. Marion Labs., Inc.*, 934 F.2d 1452, 1462 (10th Cir. 1991). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, **failure to cure deficiencies by amendments previously allowed**, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (emphasis added).

The Court previously permitted Plaintiff leave to amend her Complaint to state additional facts sufficient to survive the Board's motion to dismiss. In response to the Board's second Motion, however, Plaintiff has not formally requested leave to file another amended complaint should the Court find dismissal of the claims appropriate. Because no formal request has been made and Plaintiff failed to cure the deficiencies in the previous amendment allowed, the undersigned Magistrate Judges recommends that further leave to amend be denied. *See Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186-87 (10th Cir. 1999) (district court need not grant leave to amend when plaintiff fails to make formal motion; informal request to amend in response to motion to dismiss is insufficient if it fails to give grounds for proposed amendment and merely "dangl[es]" at end of response); *Castleglen, Inc. v. Resolution Trust Corp.*, 984 F.2d 1571, 1585 (10th Cir.

1993) (repeated failure to cure deficiencies by amendments previously allowed grounds for denying leave to amend). Therefore, the undersigned Magistrate Judge recommends that those claims dismissed herein, be dismissed with prejudice and without leave to further amend the Amended Complaint.

## V.    CONCLUSION

In summary, the undersigned Magistrate Judge PROPOSES the findings set forth above and accordingly RECOMMENDS that the Defendant Board's Motion to Dismiss [Dkt. 24] be GRANTED in part and DENIED in part as follows:

Count I (Title VII):   DENIED as to gender/sex discrimination and wage discrimination claims, but GRANTED as to hostile work environment and retaliation claims;

Count II (Equal Pay Act): DENIED;

Count III (First Amendment): GRANTED;

Count IV (Age Discrimination in Employment Act): GRANTED;

Count V (Americans with Disabilities Act): GRANTED;

Count VI (Family and Medical Leave Act): DENIED as to interference including failure to notify and discouragement, but GRANTED as to interference by termination and retaliation;

Count VII (Fair Labor Standards Act): DENIED;

Count VIII (Oklahoma Protection of Labor Act): DENIED;

Count IX (breach of implied contract): DENIED; and

Count X (*Burk* Tort): GRANTED.

Objections to this Report and Recommendation must be filed within fourteen days. *See* 18 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any objection and response shall each be limited to 10 pages and a reply is permitted only with leave of court upon a showing of good cause.

IT IS SO ORDERED this 30th day of December, 2022.

**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**