## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KIMBERLY WHEELER, | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | Case No. CIV-22-115-RAW-GLJ |
| | ) | |
| THE BOARD OF COUNTY | ) | |
| COMMISSIONERS OF THE | ) | |
| COUNTY OF LEFLORE | ) | |
| COUNTY, LANCE SMITH, | ) | |
| DERWIN GIST, and CRAIG | ) | |
| OLIVE, | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

Now before the Court is the Defendants Smith, Gist and Olive's ("Individual Defendants") Motion to Dismiss Plaintiff's Amended Complaint and Brief in Support ("Motion") [Dkt. 25]. The Individual Defendants seek the dismissal of Plaintiff's Amended Complaint for failure to state a claim, asserting that Plaintiff fails to allege any facts related to her treatment or termination to support any of her alleged claims and that they have qualified immunity as to Plaintiff's First Amendment claim. Plaintiff responds that she alleges sufficient facts to meet the requisite pleading standard [Dkt. #27]. On October 14, 2022, the Court referred this case to the undersigned Magistrate Judge for all further proceedings in accordance with jurisdiction pursuant to 28 U.S.C. § 636 [Dkt. 34]. For the reasons set forth below, the undersigned Magistrate Judge finds that the Individual Defendant's Motion to Dismiss [Dkt. 24] should be GRANTED.

1

## I.    BACKGROUND

Plaintiff is a female who was over the age of 40 at all times relevant to her claims. She originally filed this action against the Board of County Commissioners of LeFlore County ("Board") and the three individual LeFlore County Commissioners ("Commissioners") in their individual capacities, related to issues arising out of her employment with LeFlore County ("County") [Dkt. 2].  Plaintiff's allegations against the Individual Defendants focused on the discouragement of using and retaliation related to her medical leave rights, retaliation and termination for the exercise of her First Amendment rights, Open Meetings Act violation, and interference with her employment relationship and economic advantage.  *Id.*  After the Individual Defendants moved to dismiss the Complaint [Dkt. 18], Plaintiff filed her Amended Complaint, in which she removed the claim for the Open Meetings Act violation and added additional facts supporting her remaining claims.  [Dkt. 22].  Specifically, Plaintiff's Amended Complaint asserts the following claims against the Individual Defendants: violation of the First Amendment of the U.S. Constitution; violation of the Family and Medical Leave Act, 29 U.S.C. §§ 2601, *et seq.*, for interfering with Plaintiff's right to take qualified leave and retaliation; tortious interference with an employment relationship under Oklahoma common law; and tortious interference with a prospective economic advantage under Oklahoma common law.  *See* Dkt. 22.

Plaintiff was originally hired by the County in September 2012 as the Administrative Assistant in Emergency Management, where she reported to Michael Davidson, then the Director of Emergency Management for the County.  *Id.* at ¶¶ 9-10 and

18.  Plaintiff later became the County's Deputy Director of Emergency Management, which was a part-time position.  *Id*. at ¶ 22.  In January 2018, Plaintiff succeeded Mr. Davidson as Director of Emergency Management.  *Id*. at ¶¶ 25 and 30.  At the time of her November 30, 2020 termination, Plaintiff also held the titles of Safety Director, County Flood Plain Administrator and County Grant Writer, as well as being responsible for the County's 911 Addressing and Mapping and being over the Sign Shop.  *Id*. at ¶ 12.  Plaintiff was an at-will employee during her entire tenure with the County.  *Id*. at ¶ 9.  On November 30, 2020, Plaintiff was informed by County Commissioner Lance  Smith that she was being terminated, but was not given a reason for her termination.  *Id*. at ¶¶64 and 66.

## II.    MOTION TO DISMISS STANDARD

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted.  A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level."  *Id*. (citations omitted).  "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Id*. at 562. "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1192

(10th Cir. 2012). Thus, the appropriate inquiry is "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (*quoting Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007)). For the purpose of making the dismissal determination, a court must accept all the well-pled allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the claimant. *Twombly*, 550 U.S. at 555; *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007); *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1231 (10th Cir. 2002). However, the court need not accept as true those allegations that are conclusory in nature. *Erikson v. Pawnee County Bd. of County Comm'rs*, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1006, 1109-10 (10th Cir. 1991).

## III.    ANALYSIS

### A. First Amendment Claim / Qualified Immunity of the Individual Defendants

Plaintiff asserts a claim under 42 U.S.C. § 1983 based on a violation of her right to free speech under the First Amendment.[1]  Specifically, Plaintiff alleges that she was terminated by the Individual Defendants because she reported her concerns that that the County was misusing public funds received under a CARES Act grant. *See* Dkt. 22 at ¶¶

---

[1] Plaintiff asserts this claim against all defendants. Defendant Board of County Commissioners of the County of LeFlore County's Motion to Dismiss Plaintiff's Amended Complaint and Brief in Support [Dkt. 24] seeks the dismissal of this and other claims and is addressed in a separate Report and Recommendation. *See* Docket No. 35.

97-99.  The Individual Defendants invoke the qualified immunity defense, arguing that no constitutional violation occurred that violated a clearly established right about which they would have known.  Plaintiff contends the Individual Defendants are not entitled to qualified immunity because: (1) the Individual Defendants infringed upon her freedom of speech, and (2) the Individual Defendants knew or had reason to know that terminating her would violate her rights.

To address the Individual Defendants' claim of qualified immunity, the undersigned Magistrate Judge must first consider whether Plaintiff alleges a deprivation of an actual constitutional right.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Person v. Callahan*, 555 U.S. 223 (2009).  If such a violation is sufficiently alleged, then the undersigned Magistrate Judge must next determine whether "that right was clearly established at the time of the alleged violation."  *Id.*; *see also  Pearson*, 555 U.S. at 232.

*1.  First Amendment Claim.*

As a general matter, "[t]he First Amendment limits the ability of a public employer to leverage the employment relationship to restrict, incidentally or intentionally, the liberties employees enjoy in their capacities as private citizens."  *Garcetti v. Ceballos*, 547 U.S. 410, 418-19 (2006); *see also Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).  The five-step *Garcetti/Pickering* analysis applies when a public employer restricts the speech of a public employee. *Garcetti*, 547 U.S. at 418-19; *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202 (10th Cir. 2007).[2]  "First, the court must

---

[2] The five factors are: "(1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests,

determine whether the employee speaks 'pursuant to [her] official duties.'" *Brammer-Hoelter*, 492 F.3d at 1202 (quoting *Garcetti*, 547 U.S. at 421). "If the employee speaks pursuant to [her] official duties, then there is no constitutional protection because the restriction on speech 'simply reflects the exercise of employer control over what the employer itself has commissioned or created.'" *Id*. (quoting *Garcetti*, 547 U.S. at 422). This is a question of law to be resolved by the Court. *Id*. at 1203.

The Tenth Circuit "ha[s] taken a broad view of the meaning of speech that is pursuant to an employee's official duties." *Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 746 (10th Cir. 2010) (quoting *Thomas v. City of Blanchard*, 548 F.3d 1317, 1324 (10th Cir. 2008)). "[T]he Tenth Circuit has taken a case-by-case approach, looking both to the content of the speech, as well as the employee's chosen audience, to determine whether the speech is made pursuant to an employee's official duties." *Id*. "In general, the court has focused on whether the speech activity 'stemmed from and [was of] the type . . . that [the employee] was paid to do,' and has highlighted that the ultimate question in determining whether speech falls within an employee's official duties is 'whether the employee speaks as a citizen or instead as a government employee.'" *Id*. (first quoting *Green v. Bd. of Cty. Comm'rs*, 472 F.3d 794, 801 (10th Cir. 2007), then quoting *Brammer-Hoelter*, 492 F.3d at 1203)). Examples of protected government employee speech include

---

as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct." *Rock v. Levinski*, 791 F.3d 1215, 1219 (10th Cir. 2015) (citing *Garcetti*, 547 U.S. 410).

"activity afforded citizens" such as communicating with newspapers or legislators, or discussing politics with a coworker. *Id*. (quoting *Green*, 472 F.3d at 800). In contrast, "a government employee's speech is not protected when there is 'no relevant analogue to speech by citizens who are not government employees.'" *Id*. (quoting *Garcetti*, 547 U.S. at 424). "[S]peech pursuant to the employee's duty to report a particular activity is usually within that employee's official duties under *Garcetti*/*Pickering*." *Id*. at 746–47. "[S]peech directed at an individual or entity within a[n] employee's chain of command is often found to be pursuant to that employee's official duties. . . . But an employee's decision to go outside of their ordinary chain of command does not necessarily insulate their speech." *Id*. at 747.

The Individual Defendants assert that Plaintiff was speaking pursuant to her job duties and not as a private citizen when she spoke about the use of CARES Act funds. Plaintiff alleges that: at some point during her employment she held the title of the County Grant Writer; as the County Grant Writer, Plaintiff worked on a federal grant under the CARES Act in or around September or October, 2020; the Individual Defendants commented that they wanted to use the CARES Act grant money for roads, to remodel the courthouse and for other non-COVID-related items; Plaintiff informed the Commissioners that CARES Act grant funds had to be used for very specific COVID-related reimbursements; the Commissioners were "dismissive" of Plaintiff's statements about the allowed uses of the CARES Act grant funds; and Plaintiff was terminated after a November 30, 2020 Board meeting during which it was announced that Plaintiff had acquired a $1.2 million CARES Act grant for the County. *See* Dkt. 22 at ¶¶ 11 and 61-65.

7

The undersigned Magistrate Judge finds that Plaintiff does not allege facts supporting a plausible claim of a violation of her First Amendment rights.  Plaintiff does not allege any facts supporting a claim that she was acting in any capacity other than as the County Grant Writer when she informed the Commissioners of the appropriate uses of the CARES Act grant funds.  Having completed the grant application as the Grant Writer, it was squarely within Plaintiff's job to know and to understand the permitted uses of such funds and to inform the Commissioners of these facts.  Informing the Commissioners of the appropriate uses of the grant funds was one of the tasks for which Plaintiff was paid to do.  While Plaintiff intimates that the Commissioners wanted to use the funds improperly, she offers only a threadbare conclusory allegation that the Commissioners were "dismissive" of her statement about the appropriate uses of the funds in an apparent attempt to create innuendo as to the motivation for her termination and that her statement somehow involved commenting about this misuse of public funds and that it was a matter of public interest.  Plaintiff's allegations, however, provide no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Moreover, even if such conclusory allegations were sufficient to support the fourth *Garcetti* element that her First Amendment statements were a motivating factor in her termination, which it does not, it does not overcome the fact that her statements were made in the normal course of and as part of her official duties as the Grant Writer.  *See Garcetti*, 547 U.S. at 421-22 (speech that "owes its existence to a public employee's professional responsibilities" is generally not protected).  Therefore, the undersigned Magistrate Judge

finds that Plaintiff does not set forth facts sufficient to state a plausible violation of her First Amendment Rights claim.

### 2. *Qualified Immunity.*

Notwithstanding the conclusion that Plaintiff does not state a First Amendment claim, the undersigned Magistrate Judge will nonetheless analyze the Individual Defendants' qualified immunity defense. Governmental officers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was "clearly established at the time." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). "Clearly established" means that, at the time of the officer's conduct, the law was "'sufficiently clear' that every 'reasonable official would understand that what he is doing'" is unlawful. *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). To meet this standard, existing law must have placed the constitutionality of the officer's conduct "beyond debate." *Id*. This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Moreover,

> [t]o be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,'". It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S. at 666.
>
> The "clearly established" standard also requires that the legal principle **clearly prohibit the officer's conduct in the particular circumstances before him**. The rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted. This requires a high "degree of specificity." We have repeatedly

stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced. A rule is too general if the unlawfulness of the officer's conduct does not follow immediately from the conclusion that [the rule] was firmly established.

*District of Columbia v. Wesby*, __U.S. __, 138 S. Ct. 577, 589, 199 L.Ed.2d 453 (2018) (internal quotation marks and citations omitted) (emphasis added).

The undersigned Magistrate Judge finds that Plaintiff does not allege that the Individual Defendants violated a legal principal that was clearly established at the time she was terminated. The Plaintiff does not allege any facts supporting a plausible claim that it would have been "sufficiently clear" to the Individual Defendants such that every "reasonable official would understand that what he is doing" is unlawful at the time they terminated Plaintiff. At most, Plaintiff alleges that she was terminated shortly after she informed the Individual Defendants of the appropriate uses for the CARES Act grant after the Individual Defendants indicated a desire to use it for other purposes. It does not require weighing the mental state of the Individual Defendants to determine that such vague allegations do not meet the demanding standard that qualified immunity applies except for "all but the plainly incompetent or those who knowingly violate the law." *Malley*, 475 U.S. at 341. Plaintiff alleges no actual wrongdoing or misuse of public funds, or even an intent on the part of the Individual Defendants to misuse grant funds. Plaintiff also fails to allege any nexus between her advice regarding the grant funds and her termination. Instead, Plaintiff's conclusory allegations lack the degree of specificity necessary to overcome the qualified immunity defense. Therefore, the undersigned Magistrate Judge finds that

because Plaintiff does not sufficiently allege a First Amendment claim, she does not allege facts sufficient to overcome the Individual Defendants' qualified immunity defense.

**B**. **Family and Medical Leave Claim**

Under the Family and Medical Leave Act of 1993 ("FMLA"), qualifying employees are guaranteed 12 weeks of unpaid leave each year due to, *inter alia*, serious health issues or to take care of a family member with a serious health issue. 29 U.S.C. § 2601, *et seq*. Leave must be granted "when medically necessary" and may be taken on an intermittent or part-time basis. *Id*. at § 2612(a)(1). The FMLA makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of" FMLA rights and violators are subject to consequential damages and appropriate equitable relief. *Id*. at §§ 2615(a)(1) & 2617(a)(1). Plaintiff asserts her FMLA claim under two theories of relief: (1) interference and (2) retaliation.

*1.  The Individual Defendants as Employers.*

In addition to the County, Plaintiff asserts her FMLA claim against the Individual Defendants as her "employers." Under the FMLA, "employer":

> (i) means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;
>
> (ii) includes—
> > (I)    any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and
> > (II)   any successor in interest of an employer;
>
> (iii) includes any "public agency", as defined in section 203(x) of this title; and

(iv) includes the Government Accountability Office and the Library of Congress.

29 U.S.C. § 2611(4)(A). The Individual Defendants assert that they are not "employers" for purposes of the FLMA because, although the Act provides for individual liability, the plain language of the definition does not <u>explicitly</u> provide for liability of individuals who are employees of public agencies. Relying on multiple authorities, Plaintiff asserts that "employer" encompasses individual supervisors and other persons with managerial authority who are public employees.

The Tenth Circuit is silent on the issue of whether a public employee can be held individually liable for monetary damages under the FMLA. The Circuit Courts that have considered the issue are split. *Compare Modica v. Taylor*, 465 F.3d 174, 184–86 (5th Cir. 2006) (individual public employees fall within (ii)(I) and may be liable), and *Darby v. Bratch*, 287 F.3d 673, 680–81 (8th Cir. 2002), with *Mitchell v. Chapman*, 343 F.3d 811, 832 (6th Cir. 2003) (individual public employees do not fall within (ii)(I) and may not be liable), and *Wascura v. Carver*, 169 F.3d 683, 687 (11th Cir. 1999). In *Cordova v. New Mexico*, 283 F.Supp.3d 1028, 1036-39 (D. N.M. 2017), the district court provides a detailed analysis of the various Circuit Court cases on the issue and sides with the reasoning of "*Haybarger [Lawrence County Adult Probation and Parole*, 667 F.3d 408, 417 (3rd Cir. 2012)], *Modica* and the majority of district courts within the Tenth Circuit that have considered this issue. In *Cordova*, the court concluded that the "plain language of the FMLA states that an 'employer' includes a public agency, which 'shall be considered to be a person engaged in commerce or in an industry or activity affecting commerce[,]' and that

12

it also includes 'any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer[.]'" *Id.* at 1039. Moreover, although not addressing the issue of whether "employer" covers employees of state agencies, the Tenth Circuit expressly held that an FMLA claim for money damages against a state officer in his individual capacity is not barred by Eleventh Amendment immunity, even where the state was obligated by statute to indemnify the officer. *Cornforth v. Univ. of Okla. Bd. of Regents*, 263 F.3d 1129, 1132–33 (10th Cir. 2001). Further, as Magistrate Judge West recently concluded:

> [t]he vast majority of the cases considering the positions on this issue have sided with the Eighth and Fifth Circuit Courts and concluded that individual liability may be conferred upon a "person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." *See Miles v. Unified School Dist. No. 500*, 347 F.Supp. 3d 626, 630 (D. Kan. 2018); *Richards v. Schoen*, 2018 WL 447731, at 5 (D. Kan. Jan. 17, 2018); *Cordova v. New Mexico*, 283 F.Supp. 3d 11028, 1037 (D. N.M. 2017); *Hibben v. Oklahoma ex rel. Dep't of Veterans Affairs*, 2017 WL 1239146, at *6 (N.D. Okla. Mar. 31, 2017); *McFadden v. Tulsa Cty. Bd. of Cty. Comm'rs*, 2016 WL 6902182, at *2 (N.D. Okla. Nov. 23, 2016); *Washington–Walker v. Univ. of Okla. Bd. of Regents*, 2016 WL 1453053, at *3 (W.D. Okla. Apr. 13, 2016); *Kiefner v. Sullivan*, 2014 WL 2197812, at *9–10 (N.D. Okla. May 27, 2014); *Owens v. City of Barnsdall*, 2014 WL 2197798, at *6 (N.D. Okla. May 27, 2014); *Jeffers v. Redlands Comm. College Bd. of Regents*, 2012 WL 137412, at *2 (W.D. Okla. Jan. 18, 2012); *Saavedra v. Lowe's Home Centers, Inc.*, 748 F.Supp.2d 1273, 1291 (D. N.M. 2010), *but see Arbogast v. Kansas*, No. 13-CV-4007-JAR/KMH, 2014 WL 1304939, at *5–6 (D. Kan. Mar. 31, 2014); *Lacher v. Bd. of Co. Comm'rs for Okla. Co. ex rel. Okla. Co. Clerk's Office*, 2013 WL 268983, at 5 (W.D. Okla. Jan. 24, 2013).

*Dixon v. Okla. Ex rel. Reg'l Univ. Sys. of Bd. of Regents*, 2020 WL 7089427, *3 (E.D. Okla. Dec. 3, 2020). While the Individual Defendants argue these decisions should be ignored because many are unpublished, the undersigned Magistrate Judge declines to do so and instead finds these many decisions persuasive and on point. Plaintiff alleges that

13

the Individual Defendants acted directly or indirectly in the interest of the County with respect to Plaintiff's employment with the County.  Therefore, the undersigned Magistrate Judge finds that the Individual Defendants are employers under the FMLA and can be held personally liable to the extent Plaintiff pleads facts sufficient to state a plausible FMLA claim against them.

2. *Interference*.

To state a prima facie FMLA interference claim, a plaintiff must plead that: (1) she was entitled to FMLA leave; (2) an adverse action by her employer interfered with her right to take FMLA leave and (3) this adverse action was related to the exercise or attempted exercise of the employee's FMLA rights.  *DePaula v. Easter Seals El Mirador*, 859 F.2d 957, 978 (10th Cir. 2017) (citing *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1226 (10th Cir. 2013)).  "A deprivation of these rights is a violation regardless of the employer's intent. . . ." *Id.* (quoting *Tabor*, 703 F.3d at 1226-27).

The Individual Defendants assert that Plaintiff fails to allege any fact that she was prejudiced by any denial of FLMA leave, that the Individual Defendants prevented her from talking any FMLA leave or that she was entitled to further leave at the time of her termination.  In support of her FMLA interference claim, Plaintiff alleges that: her daughter was born with Spina Bifida and required her to take intermittent leave; Defendant Gist was aware at least as of late 2017 of her daughter's medical condition; the "Commissioners" told Plaintiff that she had to be in the office from 8:00 a.m. to 4:30 p.m. Monday through Friday and on call 24 hours a day and she could not leave the office for lunch unless there was someone who could fill in for her; when she missed several days of work in March

14

2020 she was not offered FMLA leave for her time off; she informed the "Commissioners" that she had to take off work on occasion to care for her daughter due to her daughter's condition; she was not informed of her right to intermittent leave under the FMLA; the "Commissioners" were unsympathetic and discouraged her from taking leave, telling her she had to be in the office because no one could perform her job in her absence; and because of the "Commissioners" demands, she limited the amount of time she took off to care for her daughter, although she did take some unspecified amount of time off to care for her daughter at unspecified times. *See* Dkt. 22 at ¶¶ 17, 24, 33-34, and 57-60. Plaintiff also alleges that the "Defendants" interfered with her FMLA leave rights by engaging in acts intended to have a chilling effect on her use of these rights and interfered with her rights by terminating her. *Id*. at ¶ 115.

In Plaintiff's attempt to assert an FMLA claim against the Individual Defendants in their individual capacities, the Amended Complaint fails to make specific allegations as to the conduct of any particular Individual Defendant against whom Plaintiff asserts her FMLA claim. Federal Rule of Civil Procedure 8(a)'s purpose is to require Plaintiff to state her claims intelligibly to give fair notice of the claims to opposing parties and the Court. *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007); *Monument Builders of Greater Kansas City, Inc., v. American Cemetery Ass'n of Kansas*, 891 F.2d 1473, 1480 (10th Cir. 1989). Imprecise pleadings undermine the utility of the complaint and violate that purpose of Rule 8. *See Knox v. First Security Bank of Utah*, 196 F.2d 112, 117 (10th Cir. 1952). Additionally, while often stated in the context of a § 1983 claim, the Individual Defendants are not to be lumped together as a group, but should be treated as individuals, each with

the Plaintiff's own claims against each Individual Defendant, based on each Individual Defendant'`s own behavior. *See Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (because § 1983 is a "vehicle[ ] for imposing personal liability on government officials, we have stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants"); *Robbins v. Okla. ex rel. Dept' of Human Servs.*, 519 F.3d 1242, 1250 (10th Cir. 2008) (stating complaint must "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him . . . as distinguished from collective allegations") (citing *Twombly*, 550 U.S. at 565 n.10); *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532-33 (10th Cir. 1998) (holding district court's analysis of plaintiff's § 1983 claims was "infirm" where district court "lump[ed]" together plaintiff's claims against multiple defendants – "despite the fact that each of the defendants had different powers and duties and took different actions with respect to [plaintiff]" – and "wholly failed to identify specific actions taken by particular defendants that could form the basis of [a] claim"). *See also Goff v. Hukill*, 2010 WL 2595785, * 7 (N.D. Okla. June 24, 2010) (noting the absence of any allegations regarding each defendants' conduct).

Moreover, to determine whether an individual may be liable for a FMLA violation, courts consider whether the defendant "exercise[d] supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation while acting in the employer's interest." *Cordova*, 283 F. Supp.3d at 1040 (internal quotation marks omitted). Thus, courts look to "whether the defendant had the ability to control, in whole or in part, whether the plaintiff could take a leave of absence and return to the

16

position." *Id*. (internal quotation marks omitted). Thus, while Plaintiff need not "specifically allege all facts relevant to the individual defendants' authority," she still must "plead that the proposed individual [d]efendants had substantial control over the aspects of employment alleged to have been violated." *Id*.

Plaintiff's Amended Complaint makes only general allegations regarding interference with her FMLA rights against the "Commissioners" and the "Defendants" collectively and does not identify any specific action taken by any particular Individual Defendant. Indeed, the Amended Complaint lacks any specific allegation as to any specific Individual Defendant taking some specific action to interfere with Plaintiff's FMLA rights. Instead, Plaintiff merely alleges vaguely that the "Commissioners" were unsympathetic, discouraged her from taking leave, told her the hours she needed to be in the office or demanded that she limited the amount of leave she took to care for her daughter. While it is possible that each of the Individual Defendants took each of these actions, Plaintiff does not allege such facts and it is not the Court's obligation to "supply additional facts to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. State of N.M.*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). Although such collective references to the "Commissioners" or Individual Defendants set forth a FMLA interference claim against the County, such collective allegations do not adequately allege a plausible claim against any of the particular Individual Defendants.[3]

---

[3] This deficiency is further highlighted in the Amended Complaint, which alleges that Defendant Commissioner Olive was not a Commissioner during the entire relevant time period. *See* Dkt. 22 at ¶ 19 (identifying Ceb Scott as the third Commissioner at that time).

Lastly, to the extent Plaintiff asserts her termination is an adverse action related to her exercise of her FMLA rights, then Plaintiff's claim fails. Plaintiff alleges no facts that her termination was plausibly related to her taking any leave or requesting to take any leave provided by the FMLA. Indeed, the Amended Complaint alleges that the last leave Plaintiff took before her November 30, 2020 termination was on March 2-6, 2020, a gap of nearly eight months. Therefore, the undersigned Magistrate Judge finds that Plaintiff does not plead facts sufficient to state a plausible FMLA interference claim against any of the Individual Defendants.

### 3. *Retaliation*.

To state a prima facie claim for FMLA retaliation, a plaintiff must show that: "(1) she engaged in a protected activity; (2) [the employer] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action." *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282 (10th Cir. 2007).

The Individual Defendants assert that Plaintiff fails to allege any facts demonstrating there is a causal connection between her termination and any exercise or attempted exercise of FMLA leave. Plaintiff identifies the facts she alleges relating to her work hours and the Commissioners discouraging her from taking leave. *See* Dkt. 27 at pp. 9-10. Additionally, Plaintiff points to her allegations that she took leave in March 2020 due to her kidney stones and she was terminated on November 20, 2020 without being given a reason. *Id.*

As an initial matter, it is not clear to the undersigned Magistrate Judge that Plaintiff alleges she engaged in a protected activity. Although she alleges she took some leave, including in March 2020, she also specifically alleges that she was not notified of her FMLA rights and that FMLA leave was not offered to her. *See* Dkt. 22 at ¶¶ 57 and 59. Thus, it does not appear that Plaintiff alleges she took FMLA leave or otherwise engaged in a protected activity. *See Campbell*, 478 F.3d at 1287 ("a retaliation claim may be brought when the employee successfully took FMLA leave, was restored to her prior employment status, and was adversely affected by an employment action based on incidents post-dating her return to work); *Doebele v. Sprint/United Mgmt. Co.*, 342 F.2d 117, 1136-38 (10th Cir. 2003) (where plaintiff was restored to her prior position after FMLA leave, but soon terminated for alleged attendance problems following her return); *Dukes v. LeFlore County*, 2018 WL 4781184, at *5 (E.D. Okla. Oct. 3, 2018) (plaintiff established that he took extended leave covered by the FLMA).

Even assuming that Plaintiff adequately alleges she engaged in a protected activity, however, she fails to allege a causal connection between such protected activity and her termination. Plaintiff simply alleges that she took off some time during unspecified dates to care for her daughter and then took four days in March 2020 due to her kidney stones, but she does not allege any facts connecting such leave to her termination on November 30, 2020 – nearly eight months after her last alleged leave. None of the cases Plaintiff cites support an inference of retaliation for such a gap of time between any protected activity and the adverse action. Similarly, Plaintiff's conclusory allegation that the "Defendants" retaliated against her by terminating her does not allege anything specific as to any

Individual Defendant or assert well-pled facts upon which the Court must rely. *See Iqbal*, 556 U.S. at 678.

Lastly, as noted above, Plaintiff fails to make specific allegations as to the conduct of any Individual Defendant against whom Plaintiff seeks to assert her FMLA retaliation claim. Therefore, the undersigned Magistrate Judge finds that Plaintiff does not set forth facts sufficient to state a plausible FMLA retaliation claim against any of the Individual Defendants.

### C. Interference with an Employment Relationship

Plaintiff asserts a claim for tortious interference with employment relationship against only the Individual Defendants. "The elements of a claim for [tortious] interference are: 1) interference with a business or contractual right; 2) malicious and wrongful interference that is neither justified, privileged, nor excusable; and 3) damage proximately sustained as a result of the interference." *Tuffy's, Inc. v. City of Oklahoma City*, 212 P.3d 1158, 1165 (Okla. 2009) ("[t]he terms 'malicious interference,' 'intentional interference,' and 'tortious interference' with contract or business relations have been used interchangeably in Oklahoma jurisprudence, and do not designate distinct torts") (internal citations omitted). *See also Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007) (citing *Morrow Dev. Corp. v. Am. Bank & Trust*, 875 P.2d 411, 416 (Okla. 1994) (same). "The element of malice, for malicious interference, is defined as an unreasonable and wrongful act done intentionally, without just cause or excuse. This element clearly requires a showing of bad faith." *Tuffy's*, 212 P.3d at 1165.

The Individual Defendants assert that Plaintiff fails to state a tortious interference claim because she was an at-will employee, such a claim cannot be asserted against them because they were considered to be parties to Plaintiff's at-will employment contract and any interference with the contract was privileged. In support of her tortious interference claim, Plaintiff alleges that: the Individual Defendants had no justification or excuse for interfering with her employment contract as described in the Amended Complaint; the Individual Defendants knew or should have known of Plaintiff's employment relationship with the County and her "expectancy of continued employment"; the Individual Defendants were involved in wrongfully terminating Plaintiff "based on the unlawful grounds" set forth in the Amended Complaint; and the actions of the Individual Defendants were intentionally, malicious and wrongful and they were not acting in a way to serve any legitimate or lawful interest of the County, but were for their own motives. *See* Dkt. 22 at ¶¶ 139-142. Plaintiff also asserts that the Individual Defendants violated the Open Meetings Act in taking action relating to her continued employment in pursuit of their own unlawful motives. *Id.* at ¶ 143.

As a general matter, Plaintiff's status as an at-will employee of the County does not bar her tortious interference claim. In the context of at-will employment, "Oklahoma recognizes tortious interference with prospective economic advantage, as well as tortious interference with an actual contractual relationship." *Goff*, 2010 WL 2595785 at *7 (citing *Gonzalez v. Sessom*, 137 P.3d 1245, 1249 (Okla. Civ. App. 2006); *Wittmer v. Thomason*, 2021 WL 849981, *8 (E.D. Okla. Feb. 26, 2021); *McNickle v. Phillips Petroleum Co.*, 23 P.3d 949, 953–954 (Okla. Civ. App. 2001); and *Harman v. Okla. ex. rel. N. Okla. Bd. of*

*Regents*, 2007 WL 1674205, *3 (W.D. Okla. June 7, 2007) (concluding that "[a]lthough there apparently is no Oklahoma Supreme Court authority directly recognizing [a tortious interference with contract claim in the at-will employment context . . . lower Oklahoma courts have recognized the cause of action without hesitation")).  Furthermore, "an actual contract is not a requirement for recovery."  *Goff*, 2010 WL 2595785 at *7.  *See also Cooper v. Northwest Rogers County Fire Protection District*, 2017 WL 3710081, *4-5 (N.D. Okla. Aug. 28, 2017) ("[t]he Oklahoma Court of Civil Appeals has held that an at-will contract of employment can form the basis for a malicious interference with a contractual relationship claim. The Court has found no decision of the Oklahoma Supreme Court to indicate that it would disagree with the Oklahoma Court of Civil Appeals on this issue. Moreover, several federal district courts have determined that an at-will employee may state a claim for malicious interference with a contractual relationship, relying on the decisions of the Oklahoma Court of Civil Appeals.") (internal citations omitted).  The undersigned Magistrate Judge finds these authorities persuasive and on point that Plaintiff's at-will employment status does not bar her claim.

The Individual Defendants also claim that, because they are considered to be parties to Plaintiff's at-will employment agreement, they cannot interfere with Plaintiff's contract and their conduct is privileged because they acted in good faith.  It is generally true that "[a] malicious interference claim 'is viable only if the interferor is not a party to the contract or business relationship[,]' and an employee's 'interference with [an employer's] contract will be privileged only when the interference is undertaken in good faith and for a bona fide organizational purpose.'"  *Wittmer*, 2021 WL 849981 at *8 (quoting *Cooper*, 2017

22

WL 3710081 at *5; *Wilspec Tech. Inc. v. DunAn Holding Group, Co.*, 204 P.3d 69, 74 (Okla. 2009) and *Martin v. Johnson*, 975 P.2d 889, 896 (Okla. 1998)); *Voiles v. Santa Fe Minerals, Inc.*, 911 P.2d 1205, 1210 (Okla. 1996) (a party "cannot be liable for wrongfully interfering with a contract if it was acting in a representative capacity for a party to that contract."). However, an employee's "interference with [an employer's] contract will be privileged only when the interference is undertaken in good faith and for a bona fide organizational purpose." *Cooper*, 2017 WL 3710081 at *5 (quoting *Martin*, 975 P.2d at 896)); *see also Martin*, 975 P.2d at 896-97 ("If an employee acts in bad faith and contrary to the interests of the employer in tampering with a third party's contract with the employer we can divine no reason that the employee should be exempt from a tort claim for interference with contract.").

In her amended complaint, Plaintiff merely recites the basic elements in alleging the conclusions that the Individual Defendants wrongfully terminated her on unlawful grounds, were not acting to serve any legitimate or lawful interest of the County and were pursuing their own motives. As previously noted, Plaintiff fails to assert plausible claims against the Individual Defendants for violating her First Amendment rights or terminating her in retaliation under the FMLA, and her allegations noted above are insufficient because they are no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Moreover, alleging that the Individual Defendants interfered with her employment by terminating her is not enough. *See Wilson v. City of Tulsa*, 91 P.3d 673, 679 (Okla. Civ. App. 2004) ("The officer's actions cannot be characterized as malicious or in bad faith based only on the fact of the interference with

the contract. Here, the record is devoid of other evidence regarding Chief's behavior or intentions toward Wilson in this context or any other.  There is, therefore, no legal basis for concluding that Chief operated outside the scope of his employment.") (citing *Martin*, 975 P.2d at 897).  *See also Grillot v. Oklahoma ex rel. University of Okla. Bd. of Regents*, 2019 WL 3558183, *4 (W.D. Okla. Aug. 5, 2019) ("for the exception to the general rule to apply with the result that the tortious interference claim alleged in this action survives, the agent accused of tortious interference must have acted against the interest of the principle and in furtherance of the agent's own, personal interest.  Moreover, to show that the agent was acting in his own interests requires more than a showing of bad faith; plaintiff must show that the agent was acting contrary to the business interest of his employer and in furtherance of the agent's own, personal interests.") (citations omitted).  Plaintiff does not allege any non-conclusory facts that the Individual Defendants acted against the interests of the County, acted in their own interest, or acted with malice or bad faith towards Plaintiff.

Lastly, the undersigned Magistrate Judge also finds that Plaintiff's assertion of an Open Meetings Act violation does not support her claim.  First, Plaintiff eliminated this claim when she filed her Amended Complaint.  *See* Dkt. 2  and 22.  Having abandoned this claim, it is odd that Plaintiff now seeks to rely on it to allege malice or unlawful conduct on the part of the Individual Defendants.

Second, Plaintiff does not offer any facts beyond speculation that the Individual Defendants "surreptitiously met to take action regarding Plaintiff's continued employment."  *See* Dkt. 22 at ¶ 143.  While the Individual Defendants assert that personnel

matters related to non-salaried public officers and employees are not subject to the Open Meetings Act, this is a misreading of the Act and the cited Oklahoma Attorney General Opinion. The Oklahoma Attorney General concluded that the Oklahoma "Legislature intended that all personnel matters were to be subject to the Open Meetings Act or there would be no reason to provide for executive sessions to discuss personnel matters." 1981 OK AG 69, ¶ 14 (April 2, 1981). Moreover, 25 O.S. § 307, which the Individual Defendants cite, provides for consideration of such personnel matters in executive session, not that they are exempt from the Act. Any consideration of and vote on such personnel matters must still be recorded and cast in public. 1981 OK AG 69 at ¶ 14 (quoting *Berry v. Bd. of Governors of Reg. Dentists, Okl.*, 611 P.2d 628, 631 (Okla. 1980)). Nonetheless, Plaintiff alleges only that after a Board meeting adjourned, the Commissioners "continued informal discussions among themselves" and that she was terminated later that morning. *See* Dkt. 22 at ¶¶ 65-66. Plaintiff does not allege that any County business or her employment status was discussed, or that any decisions were made regarding her employment status during this informal discussion, and thus, she does not allege a violation of Open Meetings Act. *See* 25 O.S. § 304(2) ("[m]eetings shall not include informal gatherings of a majority of the members of the public body when no business of the public body is discussed"). Therefore, as set forth herein, the undersigned Magistrate Judge finds that Plaintiff does not sufficiently state a plausible claim that the Individual Defendants tortiously interfered with her employment agreement.

### D.    Interference with a Prospective Economic Advantage

Plaintiff also alleges a claim for tortious interference with a prospective economic advantage.  The elements of the claim are: "(1) the existence of a valid business relation or expectancy, (2) knowledge of the relationship or expectancy on the part of the interferer, (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage to the party whose relationship has been disrupted." *Harman*, 2007 WL 1674205 at *3 (quoting *Gonzalez*, 137 P.3d at 1249). The Oklahoma Supreme Court held that, like tortious interference with contract, the element of intentional interference clearly requires a showing of bad faith.  *Loven v. Church Mut. Ins. Co.*, 452 P.3d 418, 426 (Okla. 2019) ("[t]he interference must be the purpose of the tortfeasor's act, and their motive must include a desire to interfere and disrupt the others' prospective economic business advantage").

The Individual Defendants assert that Plaintiff's claim must be dismissed because she was an at-will employee and did not plead bad faith.  Plaintiff again relies on her conclusory allegations that the Individual Defendants interfered with her expectation of economic advantage of continued employment and in doing so, acted malicious and in their own interests without any legitimate interest for the County.  Although, as previously noted, Plaintiff's at-will status does not bar her claim, *Goff*, 2010 WL 2595785 at *7, Plaintiff nonetheless fails to allege a plausible claim of bad faith.  Plaintiff fails to assert plausible claims against the Individual Defendants for violating her First Amendment rights or terminating her in retaliation under the FMLA, and allegations are insufficient that are no "more than labels and conclusions, and a formulaic recitation of the elements

26

of a cause of action." *Twombly*, 550 U.S. at 555. Moreover, alleging that the Individual Defendants interfered with her employment by terminating her is not enough. *See Wilson*, 91 P.3d at 677. Similarly, Plaintiff fails to allege sufficient facts supporting an Open Meetings Act violation. Therefore, the undersigned Magistrate Judge finds that Plaintiff does not sufficiently state a plausible claim that the Individual Defendants tortiously interfered with prospective economic advantage.

## IV.    LEAVE TO FURTHER AMEND THE AMENDED COMPLAINT

Federal Rule of Civil Procedure 15(a)(2) provides, in pertinent part, that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Whether to grant leave to amend is within the trial court's discretion. *Woolsey v. Marion Labs., Inc.*, 934 F.2d 1452, 1462 (10th Cir. 1991). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, **failure to cure deficiencies by amendments previously allowed**, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (emphasis added).

The Court previously permitted Plaintiff leave to amend her Complaint to state additional facts sufficient to survive the Individual Defendants' motion to dismiss. In response to the Individuals Defendants' second Motion, however, Plaintiff has not formally requested leave to file another amended complaint should the Court find dismissal of the claims appropriate. Because no formal request has been made and Plaintiff failed to cure the deficiencies in the previous amendment allowed, the undersigned Magistrate Judge

recommends that further leave to amend be denied. *See Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186-87 (10th Cir.1999) (district court need not grant leave to amend when plaintiff fails to make formal motion; informal request to amend in response to motion to dismiss is insufficient if it fails to give grounds for proposed amendment and merely "dangl[es]" at end of response); *Castleglen, Inc. v. Resolution Trust Corp.*, 984 F.2d 1571, 1585 (10th Cir.1993) (repeated failure to cure deficiencies by amendments previously allowed grounds for denying leave to amend). Therefore, the undersigned Magistrate Judge recommends that the claims dismissed herein be dismissed with prejudice and without leave to further amend the Amended Complaint.

## V.     CONCLUSION

In summary, the undersigned Magistrate Judge PROPOSES the findings set forth above and accordingly RECOMMENDS that the Defendants Smith, Gist and Olive's Motion to Dismiss and Brief in Support [Dkt. 25] should be GRANTED with prejudice. Objections to this Report and Recommendation must be filed within fourteen days. *See* 18 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any objection and response shall each be limited to 10 pages and a reply is permitted only with leave of court upon a showing of good cause.

IT IS SO ORDERED this 30th day of December, 2022.

**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**